The **VIDEO TRIP CORPORATION,**
Plaintiff–Appellee,

v.

**LIGHTNING VIDEO, INC.,** and
**Vestron, Inc.,** Defendants,

**Vestron, Inc.,** Defendant–Appellant.

**VESTRON PROMOTIONS, INC.,** Successor to Lightning Video, Inc.,
Counterclaim–Plaintiff–Appellant,

v.

**BEST FILM & VIDEO CORPORATION**
and The Video Trip Corporation, Counterclaim–Defendants–Appellees.

Docket 88–7736, No. 471.

United States Court of Appeals,
Second Circuit.

Argued Dec. 2, 1988.

Decided Jan. 20, 1989.

Darrell K. Fennell, Fennell & Minkoff, New York City (Ronald C. Minkoff, of counsel) for defendant-appellant and counterclaim-plaintiff-appellant.

Jeffrey E. Jacobson, Jacobson & Colfin, New York City (Bruce Colfin, of counsel) for counterclaim-defendant-appellee Best Film & Video Corp.

Garry C. Davenport, Goetz Fitzpatrick & Flynn, New York City, for plaintiff-appel-

lee and counterclaim-defendant-appellee The Video Trip Corp.

Before WINTER and MAHONEY, Circuit Judges, and METZNER, District Judge.*

METZNER, Senior District Judge:

Vestron Promotions, Inc. ("Lightning") appeals from an order denying its motion for a preliminary injunction barring The Video Trip Corporation ("VTC") and Best Film & Video Corporation ("Best") from producing and distributing certain travel video cassettes ("video").

On January 28, 1986, VTC entered into a written agreement with Lightning which granted Lightning the "exclusive rights to market, manufacture and promote" certain videos. The agreement also provided that Lightning had an exclusive license in the copyrights of the videos for the eight-year term of the agreement. The agreement further required Lightning to furnish VTC with monthly reports as to income and expenses incurred by Lightning in connection with the venture.

In the latter part of 1987 the parties experienced difficulties with the arrangement and agreed to amend the existing contract. The amendment was executed on November 4, 1987, and provided that Lightning was granted a ninety-day sell-off period within which it was to dispose of all existing inventory and collect all receivables connected with the sale of videos. The ninety-day period ended on February 3, 1988. Within thirty days of the expiration of the sell-off period, which was March 5, 1988, Lightning was to furnish VTC with a final accounting accompanied by a list of accounts receivable. If the accounting showed that VTC owed Lightning any money, VTC was required to make payment within ten days after the receipt of the accounting.

All distribution rights in the property were to revert to VTC upon execution of the agreement, but such reversion "shall

be revocable immediately and without further notice upon VTC's failure to make" payment to Lightning of moneys found due Lightning by the accounting. On December 1, 1987, when ownership of the copyrights was in VTC pursuant to the amended contract, VTC entered into an agreement with Best to distribute the videos. By the time of the filing of the counterclaims, Best was marketing these videos.

On March 22, 1988, VTC sent a long letter to Lightning in which, among other complaints, it pointed out the failure of Lightning to comply with the terms of the amended agreement in failing to file an accounting, in failing to furnish a list of accounts receivable, and in failing to return "masters of the property" and art work. Two days later, on March 24, 1988, Lightning furnished the accounting 19 days late. It showed that VTC owed Lightning $168,835. There is no indication that either the list of the accounts receivable or the masters and art work were ever turned over to VTC.

Within a week of receiving the accounting, VTC claimed that the figures were inaccurate and that, in fact, Lightning owed VTC at least $399,000. Two weeks thereafter VTC instituted suit against Lightning for copyright infringement, accounting and damages. Two months later counterclaims were filed by Lightning for copyright infringement and an injunction and for damages of $168,835.

Lightning then sought a preliminary injunction on the ground that, pursuant to the terms of the amended contract, ownership of the copyrights had reverted to it upon the failure of VTC to pay the amount that Lightning determined was due. It argues that the court below was in error in denying the application under the law applicable to copyright infringement cases.

■ The law is clearly set forth in *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985). An applicant for a preliminary injunction must first show irreparable injury. In a copyright

* Honorable Charles M. Metzner, Senior United States District Judge for the Southern District of New York, sitting by designation.

action the existence of irreparable injury is presumed upon a showing of a prima facie case of copyright infringement. The existence of a prima facie case depends in the first instance on proof by the movant that it is the valid owner of a copyright. 3 Nimmer on Copyright § 13.01 (1988).

In this case there is a serious dispute involving the very provision of the contract which it is claimed supports the transfer of the copyrights to Lightning. In addition, there are the claims of Lightning's failure to furnish a list of accounts receivable with the accounting and to return the masters and art work.

The issue of the propriety of the denial of the preliminary injunction cannot be reached until the issue of breach of contract is first disposed of. If, in fact, Lightning breached the contract in a material respect, Lightning does not own the copyrights.

A duty of good faith is inherent in every contract. Restatement (Second) of Contracts § 205 (1981). "Good faith in contracting is the obligation to preserve the spirit of the bargain rather than the letter, the adherence to substance rather than form." Corbin on Contracts § 654A (Kaufman Supp.1984). This would include an obligation upon Lightning to furnish an accurate accounting. If it were otherwise, Lightning could pick any figure out of the air and claim ownership of the copyrights if not paid within ten days.

There are numerous cases in the district courts which, while they are concerned with the question of jurisdiction, involve essentially what we are dealing with here. *See Berger v. Simon & Schuster,* 631 F.Supp. 915 (S.D.N.Y.1986); *Rotardier v. Entertainment Company Music Group,* 518 F.Supp. 919 (S.D.N.Y.1981); *Stepdesign, Inc. v. Research Media, Inc.,* 442 F.Supp. 32 (S.D.N.Y.1977); *Muse v. Mellin,* 212 F.Supp. 315 (S.D.N.Y.1962), *aff'd,* 339 F.2d 888 (2d Cir.1964).

In those cases it was pointed out that there was no need to construe or enforce the copyright law. The real question presented was whether the claimant had ownership which could only be resolved by determining the contractual obligations of the parties. Neither substantive nor procedural copyright law was involved in the resolution of the dispute.

It is understandable why a party claiming copyright protection would prefer to ignore the contract dispute and assume the validity of the ownership of the copyright. The rules for obtaining a preliminary injunction are less onerous than in other cases.

Since the issue as to the ownership of the copyright is still to be determined, we review the order of the court below in denying the application for a preliminary injunction in light of the rule applicable in any contract case. The court said in *Wainwright Securities, Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91, 94 (2d Cir. 1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978), that:

"In this circuit, a preliminary injunction can be granted if plaintiff shows irreparable injury, combined with either a probability of success on the merits, or a fair ground for litigation and a balance of the hardships in his favor."

There has been a showing of irreparable injury since, if Lightning is successful on the contract issue, it will become the owner of the copyrights and entitled to injunctive relief against infringers. *Dynamic Solutions, Inc. v. Planning & Control, Inc.,* 646 F.Supp. 1329, 1337 (S.D.N.Y.1986).

We have here serious claims of breach of contract. VTC served timely objections to the accounting and claims that its analysis of Lightning's accounting shows that Lightning owes VTC at least $399,000. Lightning failed to furnish VTC with an accounting until after complaint was made by VTC. Lightning never furnished the list of accounts which were to accompany the accounting.

The presence of these fact issues prevents a finding of probability of success. The balance of hardship appears to be even.

The order is affirmed.