**RICHARD FEINER & CO., Plaintiff,**

v.

**TURNER ENTERTAINMENT CO., MGM/UA Home Video, Inc., and Time Warner, Inc., Defendants.**

No. 96 Civ. 1472 (RO).

United States District Court, S.D. New York.

May 14, 1996.

Gregory A. Sioris, New York City, for Plaintiff.

David Dunn, Davis, Scott, Weber & Edwards, P.C., New York City, for Defendants.

*OPINION AND ORDER*

OWEN, District Judge.

Plaintiff Richard Feiner & Co. ("Feiner") sues defendants for infringement of his copyright in fifteen Laurel & Hardy cinematic photoplays ("short subjects"). The alleged copyright infringement consists of defendants' continued distribution and sale[1] of "Laurel and Hardy's Laughing 20's" (the "Laughing 20's")[2], a derivative work in videocassette and laser disc format, containing footage from Feiner's fifteen short subjects. Feiner has moved for a preliminary injunction enjoining defendants from continuing to distribute and sell any products that contain footage from the short subjects. For the reasons that follow, Feiner's motion is granted.

In contractual agreements dating from 1956, 1963, and 1965, Hal Roach Studios ("HRS"), the owner of the short subjects, granted a use license to Robert Youngson, allowing Youngson to select any of the HRS short subjects for inclusion into a motion picture compilation later named "Laurel and Hardy's Laughing 20's." The original license, as provided in the 1956 agreement, gave Youngson the right to use the short subjects for a period of seven years. Youngson could renew this license by providing HRS with written notice and paying HRS $500. A 1965 agreement stated that the use license would be extended to a term of twenty-eight years, commencing on the date that a distribution agreement for the "Laughing 20's" was signed by Youngson and MGM. On June 8, 1965, this distribution agreement was signed, and it gave MGM the sole ownership of the Laughing 20's for the twenty-eight year period of the distribution license. MGM was granted the right to extend the license period in seven-year increments upon the fulfillment of three conditions: (1) giving Youngson written notice; (2) giving HRS written notice; and (3) paying HRS $500.[3]

---

1. The issue of enjoining defendants' manufacture of the Laughing' 20's products is not before me because defendants, as of December 20, 1995, and of their own accord, made an internal decision to cease manufacture of the Laughing' 20's products and to refrain from filling any orders for them. Baier Decl. at ¶ 7.

2. Defendants' infringing action also includes the distribution and sale of "Laurel and Hardy's Laughing 20's and the Devil's Brother," "Laurel & Hardy's Gift Set," and "Laurel and Hardy's Gift Set Component," all of which contain footage from the short subjects.

3. By performing these three conditions, MGM would automatically extend Youngson's use license, since the second and third conditions for renewal of the distribution agreement were iden-

In 1966, Feiner obtained a non-exclusive license from HRS to use the fifteen short subjects. Years later, HRS and Feiner disputed whether Feiner had appropriately renewed this license and litigation ensued. On May 7, 1991, a judgment was entered in United States District Court for the Central District of California declaring the rights of Feiner and RHI, the successor-in-interest to HRS, with respect to the short subjects. This judgment granted Feiner exclusive television and home video rights through December 31, 2001 to any of the short subjects that RHI owned, controlled, or possessed.

By letter dated February 18, 1993, Turner, MGM's successor-in-interest,[4] appears to have attempted to provide written notice to Youngson of its intent to extend its rights to the Laughing 20's for an additional seven years, pursuant to the June 8, 1965 agreement. However, Turner did not fulfill the other two of the three requirements for renewal: written notice to HRS and payment to HRS of $500. At some point, Feiner was made aware of Turner's possible failure to renew, and set about to verify this. He never could get a definite answer from Turner lawyers and understandably concluded that Turner's rights had lapsed. Then, in January of 1995, when Feiner became aware that defendants were continuing to market the Laughing 20's, he contacted Turner and notified them that since Turner had not fulfilled the conditions for exercising the extension option, Turner was now infringing on Feiner's copyright based on Feiner's 1991 judgment. In a January 12, 1996 letter to Feiner, a Turner lawyer acknowledged that with respect to its option to extend its distribution—and thereby usage—rights, "there

may have been a problem in its exercise by TEC." Pl.Mem.Ex.F.

On January 19, 1996, after approximately one year of fruitless settlement talks, Turner instituted a declaratory judgment action against Feiner in Georgia state court. Three days later, a Warner executive advised Feiner that in response to instructions from MGM, the Laughing 20's had been withdrawn from distribution in its videocassette and laserdisc formats. Baier Decl.Ex.D. Feiner accepted this representation, but soon found the Laughing 20's available from a variety of video cassette vendors. Shortly thereafter, Feiner instituted this action and moved for a preliminary injunction.[5]

■ To obtain a preliminary injunction, Feiner must demonstrate (a) irreparable harm and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. *Bourne Co. v. Tower Records, Inc.*, 976 F.2d 99, 101 (2d Cir.1992).

■ I turn first to irreparable harm. Where a party establishes a *prima facie* case of copyright infringement,[6] irreparable harm is presumed. *Video Trip Corp. v. Lightning Video, Inc.*, 866 F.2d 50, 51–52 (2d Cir.1989). However, this presumption can be rebutted where a party delays in the enforcement of its copyright. *Bourne Co. v. Tower*, 976 F.2d at 101. Turner contends that Feiner's 19 month delay in enforcing its copyright, from the date of the alleged lapse of Turner's rights in June of 1993 until Feiner notified Turner of its claim in January of 1995, destroys the presumption. This contention

tical to those that Youngson would have had to fulfill to extend his use license.

**4.** Turner Entertainment Co. (TEC) is the successor-in-interest to MGM with respect to the Laughing 20's. Pursuant to a distribution agreement between Warner Home Video (a division of Time Warner Entertainment Co., which in turn is a partner of Time Warner Inc.) and MGM, Warner obtained distribution rights to the Laughing 20's.

**5.** This motion was made after Feiner's application for a temporary restraining order was denied.

**6.** I note that the 1991 judgment gave Feiner an exclusive license to exploit certain rights and privileges with respect to the short subjects. Such an exclusive license, though limited in time and place of effect, constitutes a transfer of copyright to Feiner, as defined in the Copyright Act, 17 U.S.C. § 101. Feiner, as the owner of these exclusive rights, is therefore statutorily entitled, to the extent of his exclusive rights, to all of the protections and remedies of a copyright owner, *see* 17 U.S.C. § 201(d)(2), including injunctions to prevent infringement. 17 U.S.C. § 502.

here has no merit because there is no evidence that Feiner knew or should have known, prior to being informed by an HRS representative in January 1995, that Turner had failed to properly exercise its right to extend its distribution and usage licenses. *See Woods v. Universal City Studios,* 920 F.Supp. 62 (S.D.N.Y.1996). Indeed, it is Turner's position that it had every intention of renewing its license, and in fact properly done so. Therefore, there is no basis for the suggestion that Feiner should have somehow known that Turner had not in fact renewed. From January 1995 until January 1996, Feiner's failure to file suit is explained by continuing settlement negotiations. Indeed, with the receipt of the January 22, 1996 letter acknowledging the withdrawal of the infringing material, Feiner had no reason to file a lawsuit because he understandably believed the matter to be resolved. He filed this action several weeks later, once he realized that the Laughing 20's was still available for sale. Under the circumstances, these few weeks do not constitute unreasonable delay.

█ Next, I turn to Feiner's likelihood of success on the merits. Turner argues that Feiner cannot establish a likelihood of success on the merits because Turner effectively exercised its renewal option. This argument is flawed. Turner contends that in order to exercise its option, it had only to notify Youngson in writing; written notice and payment to HRS were not required, for two reasons. First, in an addendum to the June 8, 1965 contract, HRS warranted that it had given Youngson the license to make the movie and enter into a distribution agreement and that HRS did so "without any restrictions of any kind or nature." Dunn Aff.Ex. 1 at IV 8–9. Turner interprets this clause to mean that HRS was extinguishing the conditions of renewal with respect to HRS. Such an artificial interpretation of this statement directly conflicts with HRS' later statement in the addendum that it *"irrevocably* approves, confirms and ratifies *all* of the terms, provisions and *conditions* contained in the said agreement...." *Id.* (emphasis added).

Rather, a fair reading of the HRS addendum to the June 1965 contract reveals that its purpose was to assure MGM that Youngson did in fact hold a valid use license for the underlying shorts.

█ Turner also relies on a February 7, 1978 release signed by Hal Roach, Sr. ("Roach release") resolving litigation between him and MGM over whether his name should have been listed in the credits of the Laughing 20's. The Roach release states that as far as Hal Roach Sr., his heirs, executors, or administrators and assigns were concerned, Youngson and MGM had "the full and complete right in perpetuum to use, distribute, exhibit, telecast, advertise and exploit ... 'Laurel and Hardy's Laughing Twenties' ... and any clips, or excerpts or portions from such motion picture[ ], without any obligations to me, my heirs, executors, or administrators and assigns, of any kind or nature whatsoever...." Ringler Aff.Ex.H. Turner contends that the Roach release relieved Turner of making any payment or giving any notice to HRS. This contention cannot stand. The Roach release cannot unbind HRS, a separate entity, from the rights and obligations undertaken by it as a signatory to a contract. The Roach release, not surprisingly, says nothing about claims that HRS may or may not have with respect to the Laughing 20's, because Hal Roach Sr. and HRS are two separate entities, neither having the power to irrevocably bind the other.[7] Given, then, that Turner was required to send written notice to HRS and pay HRS $500 to secure the renewal and that it failed to do so, Feiner is likely to succeed on the merits of the copyright infringement claim.

█ Whether a preliminary injunction should issue or not rests in the discretion of the district court, *Reuters Ltd. v. United Press Intern., Inc.,* 903 F.2d 904 (2d Cir. 1990), and where special circumstances exist, such as where an injunction would work great public injury, an alternative remedy

---

7. Turner's statement that Hal Roach, Sr. was the founder and principal owner of HRS, *see* Ringler Aff. at ¶ 6, is taken to suggest that the two were one in the same. However, it is clear that as early as 1972, HRS had succeeded to all rights that Hal Roach, Sr. had in the Laurel & Hardy films, and that Hal Roach, Sr. was merely a consultant to HRS. Roach Aff. at ¶ 7.

44

may be appropriate. *See Abend v. MCA, Inc.,* 863 F.2d 1465, 1479 (9th Cir.1988), *aff'd sub nom. Stewart v. Abend,* 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990). Turner has not demonstrated any special circumstances that would justify an eventual award of damages or a continuing royalty, nor has it showed that great public injury will result if the injunction is granted. *Cf. Abend,* 863 F.2d at 1479.

Accordingly, because Feiner has established the prerequisites for a preliminary injunction, and because Turner has failed to demonstrate that special circumstances exist which warrant an alternative remedy, Feiner's motion for a preliminary injunction is granted.[8]

Submit order on notice, including provision for a bond in the sum of $5,000.

---

8. I note that since defendants have ceased manufacture and shipment of the Laughing 20's, *supra* n. 1, all that remains for defendants to do to comply with this injunction is to recall from its distributors, wholesalers, and retailers whatever infringing material remains in their stock.