**SUN MICROSYSTEMS, INC.,
a Delaware Corporation,
Plaintiff,**

v.

**MICROSOFT CORPORATION, a
Washington Corporation,
Defendant.**

**No. C 97–20884 RMW PVT.**

United States District Court,
N.D. California.

Jan. 25, 2000.

---

Lloyd R. Day, Jr., Day, Casebeer, Madrid & Batchelder, Cupertino, for Plaintiff.

David T. McDonald, Karl J. Quackenbush, Preston, Gates & Ellis, Seattle, WA, Terrence P. McMahon, Barbara A. Caulfield, Orrick, Herrington, & Sutcliffe LLP, Menlo Park, CA, Allen Ruby, Ruby & Schofield, San Jose, CA, Thomas Burt, Microsoft Corporation, Redmond, WA, for Defendant.

## ORDER RE SUN'S MOTION TO REINSTATE NOVEMBER 17, 1998 PRELIMINARY INJUNCTION UNDER 17 U.S.C. § 502

WHYTE, District Judge.

Sun Microsystems, Inc.'s Motion to Reinstate November 17, 1998 Preliminary Injunction Under 17 U.S.C. § 502 was heard on October 15, 1999. The court has read the moving and responding papers and heard the oral argument of counsel. For the reasons set forth below, the court denies the motion.[1]

### I. BACKGROUND

#### A. NATURE OF MOTION

On November 17, 1998, the court granted preliminary injunctive relief to Sun Microsystems, Inc. ("Sun") restricting Microsoft Corporation's ("Microsoft") use and distribution of software products incorporating Sun's Java Technology pursuant to the terms of a Technology License and Distribution Agreement ("TLDA"). On August 23, 1999, the Ninth Circuit issued

---

1. Sun Microsystems, Inc.'s Motion to Reinstate November 17, 1998 Preliminary Injunc- tion Under Cal. Bus. & Prof.Code §§ 17200 et seq. is the subject of a separate order.

an order vacating the November 17, 1998 Preliminary Injunction Order and remanding the case for further proceedings. According to the Ninth Circuit, this court did not decide the preliminary contractual issue of whether the compatibility terms in the TLDA are license restrictions or separate covenants, the breach of which only support claims for breach of contract. *See Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121–1122 (9th Cir. 1999). The Ninth Circuit concluded "that it is appropriate to give the district court the first opportunity [to decide the issue], especially given that the parties put almost no emphasis on the issue when they litigated the preliminary injunction before the district court." *Id.* at 1122–23.

Sun now moves to reinstate the November 17, 1998 Preliminary Injunction Order based on Microsoft's alleged copyright infringement. Accordingly, as the Ninth Circuit's opinion directs, this court must answer at least two questions before any order of reinstatement of the injunction based upon copyright infringement can be made. First, the court must decide whether the compatibility provisions set forth in the TLDA limit the scope of Microsoft's license or stand only as independent covenants. Second, if necessary, the court needs to consider whether issuance of the injunctive relief requested by Sun requires a finding of willful and intentional breach of the TLDA's compatibility provisions. *Id.*

## B. THE COMPATIBILITY PROVISIONS OF THE TLDA

Sun and Microsoft entered into the TLDA in the early morning hours of March 12, 1996 after intense negotiation. Pursuant to the TLDA, Sun granted to Microsoft a non-exclusive development license "under the Intellectual Property Rights of SUN to make, access, use, copy, view, display, modify, adapt, and create Derivative Works of the Technology in Source Code form for the purposes of developing, compiling to binary form and supporting Products." TLDA § 2.1(a).[2] Sun also granted Microsoft a non-exclusive distribution license to "make, use, import, reproduce, license, rent, lease, offer to sell, sell or otherwise distribute to end users as part of a Product or an upgrade to a Product, the Technology and Derivative Works thereof in binary form." TLDA § 2.2(a)(iii).

The TLDA places compatibility requirements on Microsoft's commercially distributed implementations of the Java Technology. *See* TLDA § 2.6(a)(vi) ("Licensee agrees that any new version of a Product that Licensee makes commercially available to the public after the most recent Compatibility Date shall only include the corresponding Compatible Implementation (subject to Licensee's right to exclude the Supplemental Java Classes pursuant to Section 2.7); provided, that any version of a Product which, as of such Compatibility Date, is being beta tested by third parties, shall be exempt from such requirement."). The TLDA also places similar compatibility obligations on any Java compiler that Microsoft develops and distributes. *See* TLDA § 2.6(b)(iv) ("[A]ny new version of a Product that includes the Java Language compilation function that Licensee makes commercially available to the public after the most recent Compatibility Date shall include a mode which a Tool Customer may use to permit such Product to pass the Java Language Test Suite[3] that accompanied the Significant Upgrade.").

As to the Java Virtual Machine, section 2.6(a) sets forth a compliance validation scheme resulting in Microsoft's development and eventual delivery of a "Compatible Implementation." According to the

---

**2.** Words and phrases capitalized in the TLDA are capitalized when used in this order.

**3.** The TLDA defines "Java Language Test Suite" as "SUN's publicly available test suites for validating that products which compile the Java Language comply with the then-current Java Language Specification as of the date of the test suites." TLDA § 1.13.

TLDA, Sun may develop and deliver Upgrades to the Java Technology. *See* TLDA §§ 2.6(a)(iii), 3.1. Sun may designate two such Upgrades per year as "Significant Upgrades" and, subject to the backwards compatibility obligations of section 2.6(a)(iii), require Microsoft to deliver a "Java Reference Implementation" that is compatible with the Significant Upgrade. TLDA §§ 2.6(a)(iv), 2.6(a)(v). Compatibility under the TLDA hinges on passing the Test Suite accompanying the Significant Upgrade. *See* TLDA § 2.6(a)(iv) ("[Microsoft] shall deliver to SUN ... an upgrade to the Java Reference Implementation (each, a 'Compatible Implementation') that passes the test suite that accompanied the Significant Upgrade...."). The TLDA marks the date that Microsoft delivers the Compatible Implementation [4] in response to a Significant Upgrade as the "Compatibility Date." *Id.* Microsoft agrees that commercial distribution of a Product shall only include the Compatible Implementation of the Technology corresponding to the most recent Compatibility Date. TLDA § 2.6(a)(vi).

### C. The Remedies Limitations Of The TLDA

Section 11.2 of the TLDA states, in relevant part:

b. Licensee agrees that if at any time during the Term an officer, director or General Manager of a product group of Licensee willfully and intentionally breaches a material provision of Section 2.6 of this Agreement and Licensee fails to cure such breach within a period of one (1) year after the date that SUN provides Licensee with notice thereof, SUN shall have the right to terminate this Agreement and terminate the license grants set forth in Section 2, except with respect to any Products, including any upgrades, versions or successors thereto, which are, as of the date of the termination, either (i) commercial-

ly available to the public, or (ii) being beta tested by third parties as of the date of termination or (iii) are made commercially available to the public within six (6) months after the date of termination (collectively, "Surviving Products"). Licensee's rights under Section 2 of this Agreement with respect to Surviving Products shall survive any expiration or termination of this Agreement.

\* \* \* \* \* \*

d. Except as expressly stated in this Section 11.2 and in Section 12.6, the parties agree that in the event that either party breaches any material term of this Agreement, the non-breaching party shall deliver notice thereof to the breaching party and the breaching party shall have thirty (30) days from receiving such notice to cure such breach. If the breach continues after such 30–day period, the non-breaching party's sole remedy shall be to seek monetary damages in a court of competent jurisdiction.

## II. ANALYSIS

### A. Section 11 Of The TLDA Only Limits Breach Of Contract Remedies

Sun currently contends that the remedies limitations set forth in section 11.2 only deal with breaches of contract and do not preclude a claim for injunctive relief for copyright infringement. Therefore, Sun asserts that the preliminary injunction based upon copyright infringement should be reinstated regardless of whether Microsoft's failure to meet the compatibility requirements was willful and intentional. Microsoft contends that, according to this court's previous construction of section 11.2 of the TLDA, the availability of injunctive relief against it depends in part on a finding that Microsoft's alleged breaches of section 2.6 were willful and intentional.

When this court issued a preliminary injunction based upon trademark infringe-

4. According to section 3.3 of the TLDA, Microsoft must deliver to Sun the source code corresponding to the Compatible Implementation.

ment involving Microsoft's use of the Java Compatibility Logo, it construed section 11.2(b) to except claims involving a willful and intentional breach of Microsoft's compatibility obligations from the remedies limitation of section 11.2(d). *See Sun Microsystems, Inc. v. Microsoft Corp.*, 999 F.Supp. 1301, 1306–07 (N.D.Cal.1998). However, the parties did not specifically address and, therefore, the court did not decide whether section 11.2 applied in the first instance only to claims for breach of contract, rather than to all claims including ones for copyright and trademark infringement. Accordingly, the court interprets section 11.2 in light of the parties' most recent contentions.[5] *See also University of Texas v. Camenisch*, 451 U.S. 390, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981) (factual findings and legal conclusions in connection with preliminary injunction order are not binding).

■ The remedies limitation of section 11.2(d) is properly construed to restrict the availability of injunctive relief as to contractual breaches but not as to other claims, such as ones for copyright and trademark infringement. The language of section 11.2(d) literally refers only to claims for "breaches [of] any material term of this Agreement." Section 11.2(b) similarly refers only to willful and intentional breaches of a material provision of the

compatibility obligations of section 2.6. A "breach" is the unjustified failure to perform a material promise or covenant. *See* Witkin, *Summary of California Law* (Ninth Edition), *Contracts* § 792 at 715 (1998); *see also Andersen Consulting LLP v. American Mgmt. Sys., Inc.*, 1995 WL 510042, *3 (S.D.N.Y.1995) (interpreting "in the event of breach or threatened or attempted breach" as applying only to claims for breach of contract).

■ The TLDA's remaining language and structure are consistent with the interpretation that Section 11.2 relates to the contractual remedies available to the parties and their respective rights of termination in the event of breach. Section 11.0 entitled **"TERM AND TERMINATION"** initially provides for a 5–year term, "unless extended in accordance with this Section 11:1 or terminated prior to expiration in accordance with Section 11.2 or Section 12.6." TLDA § 11.1. Section 11.2(a) provides liquidated damages for Microsoft's willful and intentional public disclosure of the source code to the Java Technology. Section 11.2(b) provides Sun the right to terminate the Agreement under the circumstances discussed above, while section 11.2(c) provides Microsoft a right of termination if Sun fails to deliver "Technology in satisfaction of Licensee's acceptance criteria." Viewed in context with these pre-

---

**5.** The parties' respective positions on the scope of Section 11.2 have evolved over the course of this litigation. When Sun's right to preliminary injunctive relief for alleged trademark infringement was being litigated in February of 1998, Microsoft took the position that Section 11.2 with its four subparagraphs limited Sun's remedies for all types of claims including ones for trademark infringement and, by its terms, precluded a claim for injunctive relief. Microsoft also claimed, and continued to claim through June of this year, that even after termination of the TLDA under Section 11.3, it was licensed to distribute incompatible Products and could not be enjoined from doing so. Sun, on the other hand, took the position that Microsoft's trademark infringement was the result of willful and intentional conduct of an officer, director or General Manager of a product group and, therefore, governed by Section 11.2(b) which did not exclude the right to injunctive relief.

Sun did not argue that Section 11.2 as a whole had no application to non-contractual claims such as infringement claims. Now, Sun takes the position that Section 11.2 only applies to breaches of contract and has no application to trademark or copyright infringement claims. In contrast, Microsoft now argues that it could, in fact, be enjoined for distributing incompatible Products after termination of its license under Section 11.2(b) because Section 11.3 says that the license grant for Surviving Products is expressly made "subject to its continued compliance with the Test Suites current at the time of expiration or termination...." Since Section 11.5 provides that Section 11.2(d) survives termination of the Agreement, Microsoft appears now to necessarily concede that Section 11.2(d) does not apply to non-contractual claims such as ones for trademark or copyright infringement.

ceding sections, section 11.2(d) reasonably refers only to contractual remedies and does not preclude injunctive relief arising out of a claim for copyright or trademark infringement.

In addition, the scope and terms of Microsoft's post-termination license for Surviving Products indicate that section 11.2(d) applies only to claims for breach of contract. Section 11.5 provides for the survival of section 11.2(d) after expiration or termination of the TLDA.[6] Yet, the parties now appear to agree that Microsoft's post-termination license under sections 11.2(b) and 11.3 is conditioned upon compliance with Sun's Test Suites and that injunctive relief is available to Sun if Microsoft fails to satisfy this condition. This acknowledgment of the availability of injunctive relief for the failure of a condition tends to confirm that section 11.2(d) applies only to breach of contract claims, such as a breach of the compatibility provisions of section 2.6, the legal notice requirements of section 5.1 and the confidentiality provisions of section 7.0. *See* Microsoft's Opposition to Sun's Motion to Reinstate Preliminary Injunction under 17 U.S.C. § 502 at 3–4; Transcript of October 15, 1999 Hearing at 86:20–87:3, 99:20–100:17.

## B. The Compatibility Provisions of the TLDA are Separate Covenants and Not License Restrictions

Since the court concludes that injunctive relief is available for non-contractual claims such as ones for copyright infringement, the court now addresses the primary question remanded to it. According to the Ninth Circuit, "before Sun can gain the benefits of copyright enforcement, it must

definitively establish that the rights it claims were violated are copyright, not contractual, rights." *Sun*, 188 F.3d at 1122. Microsoft contends that its distribution of Sun's copyrighted code is licensed and that the compatibility obligations set forth in section 2.6 are independent covenants and only become license conditions or restrictions after the TLDA has been terminated. Sun, on the other hand, asserts that Microsoft's alleged breach of the TLDA's compatibility obligations supports claims for both copyright infringement and breach of contract.[7]

"Generally, a 'copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement' and can sue only for breach of contract." *Id.* at 1121 (quoting *Graham v. James*, 144 F.3d 229, 236 (2d Cir.1998)) (citing *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1338–39 (9th Cir. 1990)). Thus, a licensee's breach of a covenant independent of the license grant does not support a claim for copyright infringement. *See Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 559 (9th Cir.1990); *Graham v. James*, 144 F.3d at 236; *Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479 (5th Cir.1981). However, a licensee does infringe the licensor's copyright if it exceeds the scope of the license. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir.1989).[8]

The rules of contract construction embodied in California law control the interpretation of the TLDA to the extent that such rules are consistent with federal copyright law and policy. *Sun*, 188 F.3d at 1122 (citing *S.O.S.*, 886 F.2d at 1088). Therefore, the court must review the en-

---

6. *See* TLDA § 11.5 ("*Survival.* The parties' rights and obligations under Sections 2.0, 5.1, 5.2, 5.3, 5.4, 6.0, 7.0, 8.0, 9.0, 10.0, and 11.0 shall survive expiration or termination of this Agreement, except that section 2 of this Agreement shall not survive termination of this Agreement pursuant to Section 11.2(b).").

7. Sun's original complaint asserted a breach of contract claim and not a copyright claim based upon Microsoft's alleged distribution of

Products that implement the Java Technology but do not pass Sun's Test Suites.

8. As stated in *Rano v. Sipa Press, Inc.*, 987 F.2d 580 (9th Cir.1993), a licensor may claim copyright infringement, if the licensee 1) exceeds the scope of the licensing agreement; 2) breaches a condition precedent to the license, or 3) breaches the agreement in such a manner as to justify rescission, 987 F.2d at 586 (citations omitted).

tire TLDA and effect the mutual intention of the parties "as gathered from the four corners of the instrument." *Machado v. Southern Pacific Transportation Co.*, 233 Cal.App.3d 347, 352, 284 Cal.Rptr. 560 (1991); *Brobeck v. Telex*, 602 F.2d 866, 871–72 (9th Cir.1979); *see also* Cal. Civ. Code § 1641 ("the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

■ The language and structure of the TLDA suggest that the compatibility obligations are separate covenants and not conditions of, or restrictions on, the license grants.[9] The license grants in sections 2.1 ("Source Code and Development License to Technology") and 2.2 ("Distribution License to Technology") allow Microsoft to distribute the Technology and Derivative Works of the Technology as part of a Product but say nothing about the license grants being subject to, conditional on, or limited by compliance with the compatibility obligations set forth in Section 2.6 ("Compatibility"). In contrast, the language used in the Trademark License incorporated into the TLDA expressly limits Microsoft's license to use Sun's Compatibility Logo to those Products that have passed the Java Test Suites. The Trademark License provides

### 2. GRANT OF LICENSE

SUN grants to Licensee a non-exclusive, non-transferable, personal, license to use the Compatibility Logo ("License") . . . with respect to each of the Products that fully meet the certification requirements of Section 3.

\*  \*  \*  \*  \*  \*

### A. CERTIFICATION

This License applies only to versions of Licensee's Products that have successfully passed the Java Test Suites made available by SUN pursuant to the TLDA, and which otherwise fully comply with all other compatibility and certification requirements of the TLDA.

Trademark License §§ 2 and 3. Similarly, in setting forth Microsoft's rights with respect to Surviving Products following expiration of the TLDA or a termination of the TLDA for a willful breach, the parties state that Microsoft's rights are "subject to its continued compliance with the Test Suites current at the time of expiration or termination. . . ." TLDA § 11.3. The contrast in language between that used for the license grants in sections 2.1 and 2.2 with that used in the Trademark License and for Surviving Products supports the conclusion that the parties regarded the compatibility provisions of section 2.6 as separate covenants rather than limitations on the scope of the licenses.[10]

The remedies scheme set forth in section 11.2 fits logically with the parties' intent to treat the compatibility obligations as separate covenants and not as limitations on the scope of the pre-termination license grants of sections 2.1 and 2.2.[11] Section 11.2(d) gives either party a thirty day (30) period after notice to cure *any* material breach before the non-breaching party can exercise its sole remedy of seeking monetary damages. Section 11.2(b) gives Sun the right to terminate the TLDA for willful and intentional compatibility breaches by Microsoft. The TLDA makes no mention of any right to seek an injunc-

---

9. The TLDA also shows that when the parties intended to condition or limit the scope of a license, they expressly did so.

10. Sun contends that *Microsoft Corp. v. Harmony Computers & Electronics, Inc.*, 846 F.Supp. 208 (E.D.N.Y.1994) supports its position that a covenant limiting distribution rights can serve as the basis for a copyright infringement claim. However, *Harmony* did not involve a license agreement that contained a remedies limitation scheme similar to the TLDA's.

11. Sun appears to argue that a covenant in a license agreement that restricts or relates to a licensee's exercise of the statutory rights otherwise exclusively conferred to authors under the Copyright Act necessarily conditions or limits the scope of a license. However, Sun's contention ignores the parties' apparent intent to treat Microsoft's compatibility obligations as separate covenants.

tion for breach of a material provision or any suggestion that the parties intended to allow Sun to claim copyright infringement for a compatibility breach occurring before termination of the TLDA.[12] Therefore, it seems clear that the parties contemplated at the time of the signing of the TLDA that if Microsoft failed to meet the compatibility requirements of section 2.6, it would have a right to notice and a thirty (30) day period to cure before any damages claim could be made and a one-year period to cure before the TLDA could be terminated. After termination, Section 11.3 limits the scope of Microsoft's license to Surviving Products that comply with the Test Suites current at termination. If Sun could sue for copyright infringement immediately upon Microsoft's failure to fully meet the compatibility requirements, the remedies scheme would be frustrated and Microsoft would not get the full benefit of its bargained for cure periods.[13]

In light of the foregoing, the court concludes that Sun has not established that the compatibility provisions of Section 2.6 are limitations on the scope of Microsoft's license rather than independent covenants.[14] Therefore, Sun has not "definitively establish[ed] that the rights it claims were violated are copyright, not contractual, rights." *Sun*, 188 F.3d at 1122. As a

12. There was apparently no discussion during the negotiation of the TLDA suggesting that Sun would have the option of suing for copyright infringement if a Microsoft Product failed the Test Suites, Muglia Dep. (1/27/99) at ¶ 507:24–508:12.

13. Although Microsoft's breach of the compatibility obligations and concurrent use of Sun's Java compatibility logo do give rise to a claim for trademark infringement and, thus, injunctive relief before the cure periods set forth in section 11.2, Microsoft's bargained for periods still achieve meaningful protection. Injunctive relief against the use of a logo or trademark is much less disruptive than an injunction requiring reconfiguration of computer program code in a Product before further commercial distribution.

14. Sun argues that Microsoft's lead negotiator for the TLDA has admitted that compliance with the compatibility requirements of section 2.6 is a license restriction. *See* Muglia

consequence, Sun is not entitled to a preliminary injunction based upon copyright infringement.

### III. ORDER

Sun's Motion to Reinstate November 17, 1998 Preliminary Injunction Under 17 U.S.C. § 501 is denied.

1/26/99 Depo. at 117:4–6 ("In order for the technology to be licensed under this contract, we need to have run the test suites and passed them."); *see also id.* at 116:9–11 ("we have to have passed the tests, the appropriate tests, in order to release a product under the license grants of the TLDA."). Sun's argument that this extrinsic evidence rebuts Microsoft's claim has some appeal. However, the comments were made in the context of defining "Independent Work(s)" as set forth in section 1.6 and not in connection the parties' discussion of remedies limitations or the consequences of a compliance failure. Further, interpretation of the compatibility requirements as license restrictions seems inconsistent with the remedies provisions negotiated. Therefore, this extrinsic evidence does not persuade the court that Sun has definitively established that the rights it claims were violated are copyright rights.