Tyler Chase HARPER, a minor, By and Through his parents, Ron and Cheryl HARPER, Plaintiff,

v.

POWAY UNIFIED SCHOOL DISTRICT; et al., Defendants.

No. 04CV1103 JAH(POR).

United States District Court, S.D. California.

Nov. 4, 2004.

Unified School District, Penny Ranftle, All individually and in their official capacity as Members of the Board of the Poway Unified School District, Steve McMillan, All individually and in their official capacity as Members of the Board of the Poway Unified School District, Andy Patapow, All Individually and in their official capacity as Members of the Board of the Poway Unified School District, Donald A Phillips, Individually, and in his official capacity as Superintendent of the Poway Unified School District, Scott Fisher, Individually and in his official capacity as Principal of Poway High School, Lynell Antrim, Individually and in her official capacity as Assistant Principal of Poway High School, Ed Giles, Individually and in his official capacity as Vice Principal of Poway High School, David Lemaster, Individually and in his official capacity as Teacher of Poway High School, Does, 1 through 20 inclusive, defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [FED.R.CIV.P. 12(b)(6) ] [DOC. # 14] AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [DOC. # 18]

HOUSTON, District Judge.

### *INTRODUCTION*

Now before the Court are defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and plaintiff's motion for preliminary injunction. After careful consideration of the pleadings and relevant exhibits submitted, and for the reasons set forth below, this Court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss and DENIES plaintiff's motion for preliminary injunction in its entirety.

Robert Tyler, Alliance Defense Fund, Murrieta, CA, for Tyler Chase Harper, A minor, by and through his parents Ron and Cheryl Harper, Ron Harper, Cheryl Harper, plaintiffs.

Paul Vincent Carelli, IV, Stutz Artiano Shinoff and Holtz, San Diego, CA, for Poway Unified School District, Jeff Mangum, All Individually and in their official capacity as Members of the Board of the Poway Unified School District, Linda Vanderveen, All Individually and in their official capacity as Members of the Board of the Poway

## BACKGROUND

### I. Factual Background [1]

Plaintiff Tyler Chase Harper ("plaintiff") [2] is a minor and enrolled at Poway High School ("the School") in the Poway Unified School District. Compl. ¶ 21. Plaintiff is a Christian with the firmly held religious belief that homosexuality is immoral. *Id.* ¶¶ 22–23. In the weeks prior to April 21, 2004, plaintiff became aware that the School planned to observe a "Day of Silence" that he believed "endorsed, encouraged, subsidized and promoted" homosexual activity. *Id.* ¶¶ 24, 26. Plaintiff felt compelled to communicate his "sincerely-held religious beliefs" regarding "the Biblical condemnation of homosexual behavior to others in his school and his community." *Id.* ¶ 25. Therefore, on April 21, 2004 (the "Day of Silence"), plaintiff wore a T-shirt to the School on which the words "I WILL NOT ACCEPT WHAT GOD HAS CONDEMNED" had been placed on the front and the words "HOMOSEXUALITY IS SHAMEFUL 'Romans 1:27'" had been placed on the back. *Id.* ¶¶ 28–29, 31.

In addition, on April 22, 2004, plaintiff wore a different T-shirt to school with the words "BE ASHAMED" "OUR SCHOOL EMBRACED WHAT GOD HAS CONDEMNED" placed on the front and the words "HOMOSEXUALITY IS SHAMEFUL Romans 1:27" placed on the back. *Id.* ¶¶ 32–33. During Plaintiff's second period class on April 22, 2004, the classroom teacher, defendant David LeMaster ("LeMaster"), informed plaintiff that he "was in violation of the school's dress code" and told plaintiff to remove the shirt "or leave class and report directly to the school office." *Id.* ¶ 34. Plaintiff apparently decided not to remove the T-shirt but, instead, met with the School's Vice Principal, defendant Lynell Antrim ("Antrim"). *See id.* ¶ 35. Antrim informed plaintiff that the T-shirt was "clearly in violation of the dress code because it had a 'homemade' message, as opposed to a printed or more permanent message on the garment." *Id.* Antrim further informed plaintiff that "the words on the T-shirt were 'inflammatory,'" and that plaintiff should replace the shirt if he wished to return to class. *Id.* ¶¶ 36, 37. Plaintiff "politely" refused to change the shirt and was directed to wait to discuss the matter with the principal. *Id.* ¶ 38.

The School's Principal, defendant Scott Fisher ("Fisher"), then interviewed plaintiff, during which Fisher "repeatedly" inquired as to why plaintiff wore the T-shirt on both days. *Id.* ¶ 41. Fisher also informed plaintiff that the T-shirt was "too 'aggressive' and that wearing it would not be tolerated at [the School]." *Id.* In addition, Fisher further informed plaintiff that any punishment meted out would be the same whether the T-shirt had been homemade or pre-manufactured "because the content was inflammatory." *Id.* ¶ 42. Finally, Fisher told plaintiff that, due to his courteousness and respect toward school authorities, plaintiff would be required to remain in an office during the rest of the

---

1. These background facts are taken directly from plaintiffs' complaint and are accepted as true for purposes of defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *See Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir.2002); *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996).

2. Although the instant complaint lists Tyler Chase Harper's parents, Ron and Cheryl Harper, as plaintiffs, *see* Compl. ¶ 8, this Court notes there are no allegations or causes of action brought by either parent. The only reference in the body of the complaint to either parent is Ron Harper's statements regarding his contact with school officials about the incident at issue. *See id.* ¶¶ 63–68. This Court finds that Ron and Cheryl Harper are not plaintiffs but are merely listed as suing on behalf of their minor son. Accordingly, all references to the plaintiff in this matter refer only to Tyler Chase Harper.

school day, not be allowed to leave the office without an escort, and be required to depart the school grounds immediately thereafter "by the most direct route." *Id.* ¶ 43, 44. Plaintiff remained in an office as directed. *Id.* ¶ 46.

Plaintiff received visits from "various school security personnel" while he remained in the office. *Id.* ¶ 47. In particular, a former coach of plaintiff's, questioned him as to whether wearing the T-shirt "was 'worth it.'" *Id.* ¶ 48. A deputy sheriff also questioned plaintiff while he was in the School's office. *See id.* ¶ 49. The deputy sheriff, wearing a badge and carrying sidearm, informed plaintiff he was "there to determine if [plaintiff] was a dangerous student, to find out why he wore the particular T-shirt, and to determine if he was going to engage in similar behavior in the future." *Id.* The deputy sheriff suggested plaintiff should "not be offensive to others" because the Christian faith is not based on hate and further informed plaintiff that the T-shirt was "'inflammatory' and 'could encourage uprising and violence against homosexuals.'" *Id.* ¶¶ 51, 52.

At the end of the school day, plaintiff was directed to defendant Vice Principal Ed Giles' ("Giles") office. *Id.* ¶ 53. Giles explained to plaintiff that Giles knew plaintiff's family and youth pastor and that Giles was a Christian believer. *Id.* ¶ 55. Giles further explained to plaintiff that when Giles came to school "he had to leave his faith 'in the car'" and "advised [plaintiff] that when he comes to [the School] ... he too must 'leave his faith in the car.'" *Id.* ¶ 56, 57. Plaintiff informed Giles he could not do so. *Id.* ¶ 58. Plaintiff was then informed to leave school directly without stopping at his locker for any homework assignments, to which he complied. *Id.* ¶ 59–61.

Just prior to the end of the school day, Giles telephoned plaintiff's father, Ron Harper ("Ron Harper"), and informed him of plaintiff's detention and suspension for the day due to the T-shirt. *Id.* ¶ 62, 63. Ron Harper was initially given the reason for the suspension as being due to the homemade nature of the T-shirt but, after further inquiry, Giles explained that, based on his view, the message on the T-shirt was "negative" and "'only positive community messages were allowed.'" *Id.* ¶ 64–66. The next day, Ron Harper went to the School to discuss the previous day's suspension and was told that plaintiff conducted himself respectfully and honorably and that "no disruptions, altercations or other incidents among students at the school" had occurred due to his son's T-shirt. *Id.* ¶ 67, 68.

## II. Procedural History

The instant complaint was filed on June 2, 2004. Plaintiff's complaint, filed pursuant to 42 U.S.C. § 1983, alleges that defendants' actions violated plaintiff's rights: (1) to freedom of speech under the First Amendment to the United States Constitution; (2) to free exercise of religion under the First Amendment; (3) to equal protection under the Fourteenth Amendment; (4) to due process under the Fourteenth Amendment; (5) under the Establishment Clause of the First Amendment; and (6) pursuant to California Civil Code § 52.1. Plaintiff seeks declaratory and injunctive relief as well as nominal and punitive damages.

In lieu of an answer, defendants filed the instant motion to dismiss on June 22, 2004, which was set for hearing on July 30, 2004. Defendants move to dismiss all of plaintiff's claims on the grounds that each cause of action fails to state a claim upon which relief may be granted. In the alternative, defendants move to dismiss plaintiff's damages claims on the grounds that they are barred pursuant to the immunity

afforded under the Eleventh Amendment and move to dismiss the individual defendants on qualified immunity grounds.

On July 12, 2004, plaintiff filed his motion for preliminary injunction. The parties subsequently stipulated to reschedule the hearing date for both motions to August 26, 2004. Both parties filed their respective oppositions to the motions on August 12, 2004. The parties' reply briefs were each filed on August 19, 2004. On the Court's own motion, the hearing date was rescheduled to September 16, 2004.

## DISCUSSION

### I. Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

#### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). Dismissal of a claim under this rule is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Navarro,* 250 F.3d at 732. Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984); *see Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson,* 749 F.2d at 534.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir.2002); *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1200 (9th Cir. 2003); *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981). When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. *Parrino v. FHP, Inc.,* 146 F.3d 699, 705–06 (9th Cir. 1998); *Lee v. City of Los Angeles,* 250 F.3d 668, 688–89 (9th Cir.2001).

#### B. Judicial Notice

■ As an initial matter, defendants seek this Court's judicial notice of the instant complaint, a complaint filed in Superior Court, and the Poway Unified School District Administration Regulation 5.28.1. *See* Defts' Req. for Jud. Not. Plaintiff objects to the Court taking judicial notice of the Superior Court complaint because the complaint supplies facts essential to support a contention without the formal introduction of such evidence and the allegations contained in the complaint are disputed. Opp. at 10 (citing *M/V Am. Queen v. San Diego Marine Constr. Corp.,* 708 F.2d 1483, 1491 (9th Cir.1983); *In re Mora,* 199 F.3d 1024, 1026 n. 3 (9th Cir.1999)). Plaintiff does not object to taking judicial notice of the administrative regulations. *See id.* Defendants do not address plaintiff's objection in their reply brief. This Court finds it inappropriate, on motion to dismiss under Rule 12(b)(6), to take judicial notice of a complaint filed in another court without any indication as to the disposition of the allegations contained therein and with no agreement be-

tween the parties as to the truth of the facts alleged. As such, this Court declines to take judicial notice of the complaint filed in San Diego County Superior Court. This Court takes judicial notice of the complaint filed in the instant case and the Poway Unified School District Administrative Regulation 5.28.1 [3], copies of which are attached to defendants' request for judicial notice. *See* Defts' Req. for Jud. Not., Exhs. A–C. Accordingly, this Court SUSTAINS plaintiff's objection and GRANTS IN PART and DENIES defendants' request to take judicial notice. This Court, therefore, confines its review to the complaint and the documents judicially noticed.

### C. Analysis

### 1. Failure to State a Claim

### a. First Cause of Action (Freedom of Speech)

### i. Legal Standard

Public school students "do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Chandler v. McMinnville School District,* 978 F.2d 524, 527 (9th Cir.1992)("*Chandler*")(quoting *Tinker v. Des Moines Indep. Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731(1969)("*Tinker*")). In upholding the students' right to engage in nondisruptive, passive expression of a viewpoint, the Supreme Court, in *Tinker,* was careful to note that the case did "not concern speech or action that intrudes upon the work of the schools or the rights of other students." *Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 680, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986)("*Fraser*"); *Tinker,* 393 U.S. at 508, 89 S.Ct. 733. Consistent-

ly, the Supreme Court later held that public school students "cannot be punished merely for expressing their personal views on the school premises ... unless school authorities have reason to believe that such expression will 'substantially interfere with the work of the school or impinge upon the rights of other students.'" *Hazelwood v. Kuhlmeier,* 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) ("*Hazelwood*")(quoting *Tinker,* 393 U.S. at 509, 89 S.Ct. 733). "School officials may suppress speech that is vulgar, lewd, obscene, or plainly offensive without a showing that such speech occurred during a school-sponsored event or threatened to substantially interfere with the school's work." *Chandler,* 978 F.2d at 529 (citing *Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549).

"The[ ] fundamental values of 'habits and manners of civility' essential to a democratic society must, of course, include tolerance of divergent political and religious views, even when the views expressed may be unpopular. But these 'fundamental values' must also take into account consideration of the sensibilities of others, and in the case of a school, the sensibilities of fellow students." *Fraser,* 478 U.S. at 681, 106 S.Ct. 3159. *See id.* at 682, 106 S.Ct. 3159 ("the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings.")

It is also well settled that "courts are not necessarily in the best position to decide whether speech restrictions are appropriate. 'The determination of what manner of speech in the classroom or in school assembly is inappropriate properly rests with the school board,' and not with the federal courts." *Chandler,* 978 F.2d at

---

**3.** This Court finds it appropriate to consider the full text of this document even though it is quoted only in part in the complaint. *See In re*

*Stac Electronics Securities Litigation,* 89 F.3d 1399, 1405 n. 4 (9th Cir.1996).

527 (quoting *Fraser*, 478 U.S. at 683, 685, 106 S.Ct. 3159).

The Ninth Circuit has organized student speech into three distinct categories governed by different legal standards: (1) vulgar, lewd, obscene, and plainly offensive speech, which is governed by *Fraser*; (2) school-sponsored speech, which is governed by *Hazelwood*; and (3) all other speech not fitting into the other two categories, which is governed by *Tinker*. *Chandler*, 978 F.2d at 529.

### ii. Analysis

Defendants contend that Plaintiff's speech falls under either *Fraser* or *Tinker*.[4] Mot. at 6. Defendants argue that, because the speech at issue here is "plainly offensive," *Fraser* controls, but, should the Court find the speech not plainly offensive, then *Tinker* controls. *Id.* Plaintiff opposes on the grounds that (1) the speech was not offensive under *Fraser*; and (2) censoring the speech was not necessary to avoid substantial interference with schoolwork or discipline nor infringement upon others' rights under *Tinker*.[5] Opp. at 2.

Defendants contend that "if the Court finds the phrase 'Homosexuality is shameful' [to be] patently offensive, then school officials properly squelched that speech without violating the First Amendment."

Mot. at 7. Defendants argue that the phrase, worn on a T-shirt and visible to homosexual students at school, is "hateful, harassing, hurtful, and therefore plainly offensive." *Id.*[6]

Plaintiff, in opposition, argues that the *Fraser* decision was based entirely upon the vulgar, indecent, and lewd content of the speech and did not hold that merely offensive speech is protected. Opp. at 4–5. Plaintiff claims that defendants' position seeks to give schools "authority to prohibit speech merely because the speech might offend someone," which is a concept courts have not endorsed, citing to various courts not within the Ninth Circuit. *Id.* at 5 (citing, *inter alia*, *Saxe v. State College Area School Dist.*, 240 F.3d 200, 216 (3rd Cir.2001))(finding *Fraser* inapplicable because the policy in question did not involve vulgar and lewd speech); *Barber v. Dearborn Public Schools*, 286 F.Supp.2d 847, 856 (E.D.Mich.2003)(finding *Fraser* inapplicable because the speech did not refer to alcohol, drugs, or sex and was not obscene, lewd or vulgar); *Sypniewski v. Warren Hills Regional Board*, 307 F.3d 243, 254 (3rd Cir.2002)(applying *Tinker* because speech not indecent requiring application of *Fraser*). However, as defendants point out in reply, the doctrine of *stare decisis* requires this Court to follow

---

**4.** Neither party contends that the speech here falls under the *Hazelwood* category of speech.

**5.** Plaintiff initially argues that defendants' actions were not viewpoint neutral as required for government actors. *See* Opp. at 2–3. This Court notes that, as defendants point out, school speech is not governed by the same rules that apply to government actors and public speech. *See* Mot. at 7 (citing *Hazelwood*, 484 U.S. at 266, 108 S.Ct. 562; *Fraser*, 478 U.S. at 685, 106 S.Ct. 3159). Accordingly, insofar as plaintiff argues defendants must not censor speech at school unless the censorship is viewpoint neutral, this Court finds the argument unavailing.

**6.** Defendants suggest, for a more clear understanding, a substitution of the word "homosexuality" with another protected classification. Mot. at 7 (suggesting substitution of the word "women" or the phrase "black skin" for "homosexuality"). Defendants also claim that "cloak[ing the phrase] in the veil of religion" does not negate the offensiveness of the speech and, to allow religion to shield hateful speech, "the Ku Klux Klan would turn the Bible from a shield to a sword to spew hatred." *Id.* at 7–8. Plaintiff does not address either of these notions in his opposition. For the reasons stated herein, the Court finds it inappropriate to address these contentions under the analysis required for a motion to dismiss.

Ninth Circuit precedent. *See* Reply at 1 (citing *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir.1987))("District courts are, of course, bound by the law of their own circuit ...."). Under Ninth Circuit precedent, as set forth in *Chandler*, student speech may be banned by the School without offending the First Amendment if the speech is found to be vulgar, lewd, obscene, *or* plainly offensive pursuant to *Fraser*. *Chandler*, 978 F.2d at 530 (emphasis added). Thus, this Court finds, even though the speech here is clearly not vulgar, lewd or obscene, a determination of whether the speech is plainly offensive is required under *Fraser*.

The parties disagree as to the definition of "plainly offensive" as used by the *Chandler* court. *See* Opp. at 4–5; Reply at 2. This Court has found no case law that specifically defines the phrase. In *Chandler*, the Ninth Circuit looked to a dictionary definition of one word in the suppressed expression and viewed it "in the context most applicable to the case" to determine whether the expression was "plainly offensive." *Chandler*, 978 F.2d at 530. The *Chandler* court recognized that a dictionary definition "may not be determinative in all cases." *Chandler*, 978 F.2d at 530. In *Fraser*, in evaluating whether the speech was vulgar, lewd and plainly offensive, the Court examined the pervasive sexual innuendo in the expression. *Fraser*, 478 U.S. at 683, 106 S.Ct. 3159. The Court considered the maturity and other characteristics of the audience, the speech as a whole, the listeners' reaction to it, whether it was acutely insulting in light of the experience of school officials and the officials' responsibility to protect and educate children. In other words, the Court in *Fraser*, weighed the school officials' reaction (suppression of the expression) against the context of the expression and the environment in which it was delivered, as known to experienced school officials, to determine if it was properly suppressed.

The Court finds that the *Fraser* approach (*i.e.*, going beyond dictionary meanings) in determining the nature of the speech is appropriate here.

First, the Court considers the dictionary meanings. The *American Heritage Dictionary* defines 'offensive'' as "[d]isagreeable to the senses" and "[c]ausing anger, displeasure, resentment, or affront." *The American Heritage Dictionary* at 947 (3rd ed.1997). "Plainly" is defined as "unmistakably" ('plain' is often used informally for 'plainly'). *See* http://dictionary.reference.com. This Court finds that a dictionary definition may be a starting point but is certainly not the end of the inquiry. Based upon a review of the complaint and the School's policy, this Court has no difficulty determining that the expression involved here is, without doubt, clearly derogatory. The balance of the inquiry, however, is whether it is plainly offensive, that is unmistakably or obviously offensive. In this Court's view, the determination of whether speech is plainly offensive cannot be conclusively determined.

Without extrinsic evidence to support defendants' position, defendants invite this Court to infer sufficient facts and circumstances in defendants' favor to support their position that the expression is plainly offensive or, in the alternative, if it is not, the defendants acted properly to suppress plaintiff's expression. This Court is mindful that, in deciding a motion to dismiss for failure to state a claim upon which relief may be granted, it must view the facts alleged, as well as any inferences drawn from those facts, in the light most favorable to plaintiff, not to defendants. As such, this is an invitation the Court is without authority to accept. *See Thompson*, 295 F.3d at 895; *Cahill*, 80 F.3d at 337–38.

■ Defendants further contend, if there is no finding that the speech is plainly offensive, that censorship of the speech

cannot be found violative of the First Amendment based on *Tinker*. The Supreme Court, in *Tinker*, found student speech may be suppressed if it "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Tinker*, 393 U.S. at 513, 89 S.Ct. 733. To satisfy the First Amendment, "school officials must justify their decision by showing 'facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities,' " *LaVine v. Blaine School District*, 257 F.3d 981, 989 (9th Cir.2001)(quoting *Tinker*, 393 U.S. at 514, 89 S.Ct. 733), or the "invasion of the rights of others." *Tinker*, 393 U.S. at 513, 89 S.Ct. 733.

■ Defendants contend that the speech is disruptive and violative of the rights of others. *See* Mot. at 8–10. Defendants argue that school officials were justified in their actions due to the reasonable belief that the speech violated the rights of other students and faculty. *See id.* at 8–10; Reply at 2–3. Specifically, defendants argue, based on the facts pled in the instant complaint, and coupled with the material sought to be judicially noticed, the Court should determine "that District officials could reasonably conclude ... the rights of other students were invaded by plaintiff wearing the T-shirt to class." Mot. at 8. Defendants also contend the school officials' belief that the speech at issue was disruptive is evidenced by the sheriff's deputy's statement of his opinion that such was the case and by a complaint filed in San Diego County Superior Court which defendants seek the Court to take judicial notice. *Id.* at 9; *see* Defts' Req. for Jud. Not., Exh. B. This Court has, however, declined to take judicial notice of the San Diego County Superior Court complaint referred to by defendants.

Based solely on all the allegations presented in the instant complaint, viewed in the light most favorable to plaintiff, this Court finds that the deputy sheriff's statement of his belief that the speech at issue 'could encourage uprising and violence against homosexuals,' Compl. ¶¶ 51, 52, is insufficient in itself to lead the Court to conclude as a matter of law that school officials reasonably believed the speech "forecast substantial disruption of or material interference with school activities" to justify the censorship. *LaVine*, 257 F.3d at 989. In addition, this Court's review of the complaint reveals that plaintiff has alleged no facts indicating any other persons' rights were violated by the speech.

Extrinsic evidence may assist the factfinder in determining the pervasiveness of the expression in light of the subject environment under *Fraser*, or the School's rationale for its response to it under *Tinker*. On the other hand, in the context of the assertions in the complaint viewed as true for purposes of this motion, there may be no reasonable limitation allowed on plaintiff's expression. As Justice Blackmun stated in considering the outer reaches of the First Amendment's right to free speech:

> There indeed may be no such limit, but when citizens assert, not casually but with deep conviction that the [expression occurs] at a place and in a manner that [may be] taunting and overwhelmingly offensive [to others] of that place, that assertion, uncomfortable as it may be for judges, deserves to be examined. It just might fall into the same category as one's right to cry fire in a crowded theater, for the character of every act depends upon the circumstances in which it is done.

*Smith v. Collin*, 439 U.S. 916, 918, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978)(Justice Blackmun dissenting).

Accordingly, defendants' motion to dismiss plaintiff's first cause of action for

violation of the First Amendment's right to freedom of speech based on the failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is DENIED.

### b. Second Cause of Action (Free Exercise of Religion)

■ Defendants contend that plaintiff's second cause of action based on violation of plaintiff's right to free exercise of religion fails as a matter of law. *See* Mot. at 13. The Free Exercise Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), "forbids all laws 'prohibiting the free exercise' of religion." *McDaniel v. Paty*, 435 U.S. 618, 620, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978) (quoting U.S. Const. amend. I). This Clause protects not only the right to hold a particular religious belief, but also the right to engage in conduct motivated by that belief. *Employment Div. v. Smith*, 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (recognizing that "the exercise of religion often involves not only belief and profession but the performance of (or abstention from) physical acts ...") (internal quotation marks omitted).

This Court notes that " 'the Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government.' " *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) (quoting *Sherbert v. Verner*, 374 U.S. 398, 412, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (Douglas, J., concurring)). In the First Amendment context, religious exercise typically refers to an act or practice central to a particular religion. *Hernandez v. Commissioner*, 490 U.S. 680,

699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989) (religious exercise defined as observation of central religious belief); *Thomas v. Review Board of the Indiana Employment Sec. Div.*, 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981) (religious exercise defined as behavior compelled by faith); *see also Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 162, 122 S.Ct. 2080, 153 L.Ed.2d 205 (finding door-to-door canvassing a religious exercise). Government burdens free exercise by directly restraining or indirectly discouraging individuals from engaging in such practices. *Sherbert*, 374 U.S. at 404 n. 5, 83 S.Ct. 1790 (citing *American Communications Assn. v. Douds*, 339 U.S. 382, 402, 70 S.Ct. 674, 94 L.Ed. 925 (1950)); *see also School Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 223, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) ("[I]t is necessary in a free exercise case for one to show the coercive effect of the [government act] as it operates against him in the practice of his religion.").

Defendants argue that plaintiff has alleged no facts showing he was "prevented from engaging in conduct required by his religion." Mot. at 14. Defendants point out that "[p]laintiff's right of free exercise does not relieve [p]laintiff of his obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his own religion prescribes (or proscribes).' " *Id.* (quoting *Smith*, 494 U.S. at 879, 110 S.Ct. 1595). According to defendants, the School's neutral policy prohibiting harassment on the bases of race, gender, national origin, religion, and sexual orientation applies to all students, including plaintiff, "regardless of his religious beliefs." *Id.*

Plaintiff, in opposition, claims [7] the complaint alleges that "[d]efendants attempted

---

**7.** Plaintiff contends, in opposition, that "[t]his case presents a classic hybrid rights case"

which the Supreme Court, in *Smith*, found

to change [p]laintiff's religious views regarding homosexuality and his duty to warn his classmates of its dangers" and was punished for expressing his religious views. *Id.* at 16 (citing Compl. ¶¶ 49–57). Based on these allegations, plaintiff contends that he has stated a claim for violation of his free exercise rights. *Id.*

Defendants, in reply, point out that the instant complaint does not allege defendants attempted to alter plaintiff's religious beliefs or punish him for expressing his religious views. Reply at 5. Defendants contend that defendant Giles' advice to plaintiff to "leave his faith in the car" is insufficient to state a free exercise claim. *Id.* Defendants also claim that plaintiff does not allege he was punished by defendants in any way. *Id.*

The instant complaint alleges plaintiff's "sincerely-held religious beliefs ... compel him to express his opposition to homosexual behavior" and defendants' "censorship of religious expression that is critical of homosexual behavior" is not justified. Compl., ¶¶ 92, 96. Plaintiff alleges defendant Giles advised him that "he ... must 'leave his faith in the car.'" while on school premises. *Id.* ¶ 57. As previously discussed, this Court must view the allegations presented in the light most favorable to plaintiff, being mindful that dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Thompson*, 295 F.3d at 895; *Cahill*, 80 F.3d at 337–38. *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *Navarro*,

250 F.3d at 732. This Court finds that the complaint, as pled, sufficiently alleges a claim for violation of plaintiff's free exercise rights. Accordingly, defendants' motion to dismiss plaintiff's second cause of action based on violation of the First Amendment's right to free exercise of religion is DENIED.

### c. Third Cause of Action (Equal Protection)

Defendants contend that plaintiff's third cause of action fails to state a claim for violation of the plaintiff's right to equal protection under the law. The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Shaw v. Reno*, 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). "The guarantee of equal protection is not a source of substantive rights or liberties, but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae*, 448 U.S. 297, 322, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980) (citations omitted).

Conclusory allegations of discrimination are insufficient to withstand a motion to dismiss, however, unless the plaintiff alleges facts which may prove invidious discriminatory intent. *Village of Arlington*

requires strict scrutiny. Opp. at 15 (citing *Swanson v. Guthrie Ind. Sch. Dist.*, 135 F.3d 694, 700 (10th Cir.1998)). Plaintiff concedes that the School's prohibition on speech is "arguably" neutral but, when viewed with plaintiff's other constitutional claims, the prohibition becomes hybrid and, thus, a colorable free exercise claim. *Id.* This Court notes that before it can apply a higher level of

scrutiny that may be required for hybrid rights cases, there must first be a colorable free exercise claim. Thus, if the Court determines that there is a colorable free exercise claim alleged, defendants' motion must be denied. Therefore, a determination of whether this case presents a hybrid rights case is unnecessary for purposes of the instant motion.

*Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Therefore, when an equal protection violation is alleged, the plaintiff must plead facts to show that the defendant "acted in a discriminatory manner and that the discrimination was intentional." *FDIC. v. Henderson,* 940 F.2d 465, 471 (9th Cir. 1991) (citations omitted); *Reese v. Jefferson School Dist. No. 14J,* 208 F.3d 736, 740 (9th Cir.2000). " 'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979).

■ Equal protection claims require strict scrutiny if the legislation discriminates against a suspect class or impinges upon a fundamental right. *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). The Equal Protection Clause may give rise to a cause of action even if the plaintiff does not allege membership in a class or group. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). However, this type of equal protection challenge is evaluated under a rational-basis test to determine whether the legislation at issue is irrational or wholly arbitrary. *Conti v. City of Fremont,* 919 F.2d 1385, 1389 (9th Cir.1990). In equal protection claims brought by a "class of one," the plaintiff must allege that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *See Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 445, 43 S.Ct. 190, 67 L.Ed. 340 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989).

■ Defendants argue that, because plaintiff's claims are based on his right to religious freedom, plaintiff must plead facts that show defendants invaded this fundamental right and that defendants' actions were not narrowly tailored to serve a compelling interest. Mot. at 11. Defendants contend that their actions were narrowly tailored to serve a compelling government interest, that is, compliance with the California Education and Penal Code. *Id.* In addition, defendants contend that there are no facts alleged indicating plaintiff received disparate treatment or was treated differently because of his religion. *Id.*

Plaintiff contends, in opposition, that the complaint clearly alleges defendants violated plaintiff's right to religious freedom by censoring his religious view that homosexuality is harmful while supporting the opposing viewpoint by others in sanctioning the "Day of Silence." Opp. at 17. Plaintiff points out that courts have found such disparate treatment violates equal protection guarantees. *Id.* (citing *Hansen v. Ann Arbor Public Schools,* 293 F.Supp.2d 780, 807 (E.D.Mich.2003)). This Court's review of the allegations and facts presented contradicts both plaintiff's and defendants' interpretation of the claim.

The complaint alleges that "[u]nder the Policies, [d]efendants have allowed other students to wear homemade T-shirts, while suspending [plaintiff] for wearing his homemade T-shirt" thereby treating plaintiff "differently than other similarly-situated students, based on the content and viewpoint of his expression" and having "no compelling reason that would justify their disparate treatment of [plaintiff]." Compl. ¶¶ 99–101. The complaint also presents, as factual support for this claim, that Ron Harper was "told 'only positive

community messages were allowed' and that shirts with negative messages were not allowed." Compl. ¶ 65. In viewing the allegations and facts presented, this Court cannot infer, as plaintiff suggests, that the complaint alleges plaintiff's religious viewpoint was censored. Plaintiff's equal protection claim speaks of plaintiff's "homemade T-shirt" and the supporting facts speak of "negative messages." Compl. ¶¶ 65, 99–101. This Court has found no allegation or fact indicating plaintiff's alleged disparate treatment was based on his religious viewpoint. Thus, based on the allegations and facts presented, viewed in the light most favorable to plaintiff, this Court finds plaintiff's equal protection claim is based on censorship of plaintiff's negative message and non-censorship of positive messages. This Court finds nothing in the complaint that could infer the School's censorship of plaintiff's expression was based on his religious viewpoint.

Because there are no facts alleged that could be inferred to implicate plaintiff's fundamental rights based on religion nor any facts to indicate plaintiff belongs to a protected class, plaintiff's claim is treated as alleging a "class of one," requiring plaintiff to allege no rational basis for the difference in treatment. *See Sioux City Bridge Co.*, 260 U.S. at 445, 43 S.Ct. 190; *Allegheny Pittsburgh Coal Co.*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688.

The School's policies presented in the complaint clearly prohibit T-shirts bearing negative messages that "target[ ] members of a particular ... sexual orientation." Compl., Exh. D; *see also id.* ¶ 69, Exh. B (prohibiting "derogatory connotations directed toward sexual identity."). The policies also state that these prohibitions are invoked in order "to promote harmonious human relationships that enable students to gain a true understanding of the rights and duties of people in our heterogeneous society ..., to promote the rights of equal-

ity and human dignity ..., [and to] foster[ ] positive attitudes and practices among students, staff and administration." *Id.*, Exh. D. The policies further explain that the expression of negative messages toward sexual orientation may cause "anxiety and lowered self-esteem [which could] impede learning." *Id.* This Court finds that the policies contained in the complaint clearly present a rational basis for the censorship of plaintiff's negative message.

Therefore, based on the facts and allegations presented, viewed in the light most favorable to plaintiff, it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief on his equal protection claim. *See Thompson*, 295 F.3d at 895; *Cahill*, 80 F.3d at 337–38. *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *Navarro*, 250 F.3d at 732. Accordingly, defendants' motion to dismiss plaintiff's third cause of action for violation of his equal protection rights is GRANTED.

### d. Fourth Cause of Action (Due Process)

The instant complaint sets forth three policies which plaintiff avers are relied upon by defendants as justification for their actions. First, plaintiff claims defendants rely upon the policy set forth in a student handbook entitled "Socially Responsible Behavior," which states, in pertinent part:

C. Dress: School clothing should be neat, clean, and appropriate for school activities and should follow the standards of common decency. The dress code will be enforced at school-sponsored activities. Clothing that violates this standard is unacceptable, and the student in violation will be disciplined appropriately. Examples of unacceptable dress are as follows:

. . . . .

3. Clothing and accessories (including backpacks) that promote or portray:

. . . . .

c. Violence or hate behavior including derogatory connotations directed toward sexual identity.

Compl. ¶ 69, Exh. B.

Second, plaintiff alleges defendants rely upon the Poway Unified School District's Board Policy, Article 5.0, Section 5.6, which provides, in part:

Students attending schools within the District have the right to exercise free expression including, but not limited to, the use of bulletin boards, distribution of printed materials or petitions, and wearing buttons, badges and other insignia. The Board respects students' rights to express ideas and opinions, take stands, and support causes, whether controversial or not, through their speech, their writing, their clothing, and the printed materials they choose to post or distribute.

. . . . .

In the exercise of the student rights described above, no student shall distribute, materials, wear buttons or displays, or post notices or other materials which:

1. Are obscene to minors according to current legal definitions.

2. Are libelous or slanderous according to current legal definitions.

3. Incite students so as to create a clear and present danger of the imminent commission of unlawful acts on school premises or of the violation of lawful school regulations or of the substantial disruption of the orderly operation of the school.

4. Express or advocate racial, ethnic, or religious prejudice so as to create a clear and present danger of imminent commission of unlawful acts on school premises or of the violation of lawful school regulations or of the substantial disruption of the orderly operation of the school.

Compl. ¶ 72, Exh. C.

Finally, plaintiff alleges defendants rely on as justification for their actions, the following portion of the Board Policy, Article 5.0, Section 5.28.1, which states:

In order to foster a supportive environment for a diverse student body, the Poway Unified School District provides guidelines to assist schools in the reduction and/or prevention of hate behavior. For the purpose of these guidelines the operational definition of hate behavior is as follows:

A hate behavior is any act or attempted act to cause physical injury, emotional suffering, or property damage through intimidation, harassment, racial/ethnic slurs and bigoted epithets, vandalism, force or the threat of force, motivated all or in part by hostility to the victim's real or perceived gender, race, ethnicity, religion, sexual orientation, or mental or physical challenges ...

Compl. ¶ 74; *see* Defts' Req. for Jud. Not., Exh. C.

Plaintiff's fourth cause of action alleges that defendants' "policies are vague and lack sufficient objective standards to curtail the discretion of school officials, which allows [d]efendants to enforce the policies in an ad hoc and discriminatory manner" in violation of due process. Compl. ¶ 104. Defendants contend that the policies at issue are not vague or ambiguous and, therefore, plaintiff's fourth cause of action must be dismissed. Mot. at 12.

■ A policy may be found void for vagueness if a reasonable person of ordinary intelligence could not understand what conduct is prohibited. *See Broadrick v. Oklahoma,* 413 U.S. 601, 608, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Defendants argue that a reasonable student in plain-

tiff's position having read the School's policies, would understand that the language on his T-shirt was prohibited. Mot. at 12. Defendants further argue that the policies present specific examples of prohibited behavior along with the guidelines presented by plaintiff. *Id.* These examples, defendants point out, include an explanation "that hate behavior can be words considered offensive to persons of a specific sexual orientation" and "that hate behavior can consist of words where the bearer of the statement exalts his or her own classification while demeaning the victim group." *Id.* According to defendants, this case fits perfectly within the examples set forth in the Board Policy. *Id.* at 12–13.

■ Plaintiff, in opposition, contends that, because the policies require a subjective decision entirely within the discretion of the school officials, the policies "invite arbitrary and discriminatory enforcement by giving unbridled discretion to enforcement officials" which violates a "fundamental principle[ ] of due process." Opp. at 17–18 (citing *Grayned v. City of Rockford,* 408 U.S. 104, 109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)).

The Supreme Court, in *Grayned,* found that a law which delegated "basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis" was impermissibly vague. 408 U.S. at 109, 92 S.Ct. 2294. However, the enforcers of the statute at issue here are school officials, not policemen, judges, or juries as was the case in *Grayned.* School authorities are given much greater discretion in enforcing their rules. *See Hazelwood,* 484 U.S. at 266, 108 S.Ct. 562 ("A school need not tolerate student speech that is inconsistent with its 'basic educational mission,' even though the government could not censor similar speech outside the school."); *Fraser,* 478 U.S. at 686, 106 S.Ct. 3159 ("Given the school's need to be able to impose disciplinary sanctions for

a wide range of unanticipated conduct disruptive of the educational process . . . school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions.").

The policies here clearly prohibit T-shirts bearing messages that are "derogatory connotations directed toward sexual identity." Compl. ¶ 69, Exh. B. The phrase "Homosexuality is shameful" is clearly derogatory toward sexual identity. Based solely on the policies detailed in the instant complaint, this Court finds that a reasonable student would know that the message on plaintiff's T-shirt was prohibited. Thus, this Court finds the School's policies are not vague or "lack sufficient objective standards to curtail the discretion of school officials." *Id.* ¶ 104. Therefore, plaintiff's due process challenge fails as a matter of law. Accordingly, defendants' motion to dismiss plaintiff's fourth cause of action is GRANTED. Because the Court finds, as a matter of law, the policies at issue are not void for vagueness or impermissibly lack objective standards, plaintiff's due process challenge on this ground is DISMISSED WITH PREJUDICE.

### e. Fifth Cause of Action (Establishment Clause)

Plaintiff's fifth cause of action alleges that defendants' policies, and the enforcement of those policies, are "hostile to religion," "treat[ ] [plaintiff] as a second-class citizen . . . because of his protected religious expression," and "allow district officials to approve one religious message over another and irreligion over religion," in violation of "the Establishment Clause of the First Amendment to the United States Constitution . . . as applied to the states under the Fourteenth Amendment." Compl. ¶¶ 108–111. Defendants contend plaintiff's claim fails as a matter of law

and, therefore, must be dismissed. Mot. at 14–16.

■ The Establishment Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, *Widmar v. Vincent,* 454 U.S. 263, 271 n. 8, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), provides that "Congress shall make no law respecting an establishment of religion ...." U.S. Const. amend. I. This Clause, among other things, prohibits the government from preferring one religion over another. *Larson v. Valente,* 456 U.S. 228, 244, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."); *Mayweathers v. Newland,* 314 F.3d 1062, 1068 (9th Cir.2002) ("The Establishment Clause of the First Amendment prohibits any government from enacting a law that would respect the establishment of religion."), *cert. denied sub. nom, Alameida v. Mayweathers,* 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003).

> While this clause forbids Congress from advancing religion, the Supreme Court has interpreted it to allow, and sometimes to require, the accommodation of religious practices: "This Court has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *Hobbie v. Unemployment Appeals Comm'n of Fla.,* 480 U.S. 136, 144–45, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987). Moreover, "in commanding neutrality the Religious Clauses do not require the government to be oblivious to impositions that legitimate exercises of state power may place on religious belief and practice." *Bd. of Educ. of Kiryas Joel Village, Sch. Dist. v. Grumet,* 512 U.S. 687, 705, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994).

*Mayweathers,* 314 F.3d at 1068.

■ The three-part test developed in *Lemon v. Kurtzman* helps determine whether an accommodation statute achieves this neutrality by avoiding "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Id.* (citing *Lemon v. Kurtzman,* 403 U.S. 602, 612, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)). Under the *Lemon* test, a statute will survive an Establishment Clause attack if: (1) it has a secular legislative purpose, (2) its primary effect neither advances nor inhibits religion, and (3) it does not foster excessive government entanglement with religion. *Lemon,* 403 U.S. at 612–13, 91 S.Ct. 2105; *Mayweathers,* 314 F.3d at 1068.

■ Defendants contend that the T-shirt's message worn by plaintiff was not prohibited, and plaintiff was not suspended, based on its religious content but, instead, on the fact that the "words as written ... [were] directed towards a protected class, homosexuals, in an inflammatory way." Mot. at 15. Defendants note that there are no allegations the school informed plaintiff he could not wear religious shirts in general or shirts that bore a religious positive messages. *Id.* at 15–16. Defendants point out that, under the *Lemon* test, the school's actions meet the requirements, in that there is a secular purpose to curtail hurtful speech aimed at another race, gender or sexual orientation. This secular purpose, defendants contend, neither inhibits or endorses any particular religion, nor create any excessive government entanglement. *Id.* at 16.

Plaintiff contends that the deputy sheriff's and defendant Giles' statements were given to "coerce Chase Harper into changing his beliefs about homosexuality and

warning others about its consequences" which violates the Establishment Clause. Opp. at 19. Plaintiff points out that the Ninth Circuit has determined that a teacher may not share his personal religious beliefs in school without running afoul of the Establishment Clause because student equate teachers' views with those of the school. *Id.* According to plaintiff, a student who "equates the views of a teacher with the government, [will] surely do so when a vice principal or deputy sheriff assigned to the school speaks." *Id.* Thus, plaintiff contends that the statements made to plaintiff by the deputy sheriff and defendant Giles were intended to coerce plaintiff to change his religious views and are impermissible. *Id.*

This Court finds that the policies upon which the school authorities acted have a secular purpose: "promoting an environment that fosters positive attitudes and practices among students, staff and administration ... includ[ing],.. members of a particular ... sexual orientation ..." Compl., Exh. D. Thus, this Court agrees with defendants that the actions of the school officials in this case were consistent with the requirements under the *Lemon* test. As to whether the policies' primary effect neither advances nor inhibits religion, the facts and allegations contained in the complaint can be inferred to support either plaintiff's or defendants' version. The complaint avers that the deputy sheriff *"proposed* to [plaintiff] that as a member of the Christian faith, he *should* understand that Christianity was based on love not hate, and that [plaintiff] *should* not be offensive to others." Compl. ¶ 51 (emphasis added). Defendant Giles, similarly, merely *"advised* [plaintiff] that when he comes to Poway High, *if* his religious beliefs are offensive, he too must 'leave his faith in the car.'" *Id.* ¶ 57 (emphasis added). Plaintiff's deliberate use of the words "proposed," "should," and "advised" signifies that the speaker did not specifically

order plaintiff to cease and desist in expressing his religious views. In addition, the use of the word "if" signifies that the speaker left the decision as to whether to "leave his faith in the car" to plaintiff "if" it was plaintiff's belief that the expressive message would be offensive. *See id.* ¶ 57. Based on the facts and allegations presented in the instant complaint, and all inferences drawn from those facts, viewed in the light most favorable to plaintiff, this Court finds that it does not appear beyond doubt that plaintiff can prove no set of facts that may entitle him to relief. *Thompson,* 295 F.3d at 895; *Cahill,* 80 F.3d at 337–38; *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99; *Navarro,* 250 F.3d at 732.

Therefore, this Court finds that plaintiff has sufficiently stated a claim under the Establishment Clause upon which relief may be granted. Accordingly, defendants' motion to dismiss plaintiff's fifth cause of action under the Establishment Clause is DENIED.

### f. Sixth Cause of Action (Cal.Civ. Code § 52.1)

 Plaintiff's sixth cause of action alleges that defendants "interfered or attempted to interfere with [p]laintiff's constitutional rights by the use of threats, intimidation, and/or coercion, in that defendants threatened expulsion, suspension and/or other discipline and engaged in intimidation and coercive tactics to compel [p]lantiff to forgo his constitutional rights" in violation of California Civil Code § 52.1. Compl. ¶¶ 113, 116. Defendant contend that plaintiff fails to state a claim upon which relief may be granted on this claim. Specifically, defendants argue that the claim fails as a matter of law because there are "no allegation[s] that there were any threats, intimidation or coercion." Mot. at 16.

In opposition, plaintiff points out that the complaint "clearly alleges violations to [plaintiff's] First Amendment liberties … in causes of action one through six … [and] that '[p]laintiff was suspended from classroom instruction, detained in a small office for most of the school day, interrogated by a deputy sheriff, counseled by numerous school district officials, and in the end, told to leave his faith in the car.'" Opp. at 20 (quoting Compl. ¶ 114). Plaintiff further points out that the complaint states that plaintiff was threatened with "'expulsion, suspension and/or discipline'" if he did not remove his T-shirt. *Id.* (quoting Compl. ¶¶ 36–38). Plaintiff claims that the complaint also contains facts that "generally and implicitly" allege Plaintiff "was the victim of numerous acts of attempted intimidation and coercion by school officials." *Id.* (citing Compl. ¶¶ 36–38, 41–44, 47–52, 55–57, and 113).

Defendants, in reply, reiterate that there are "no allegation[s] of threats, intimidation or coercion" as required to maintain an action under California Civil Code § 52.1. Reply at 6. In addition, defendants contend that the claim is based upon the same constitutional rights as plaintiff's Section 1983 claim and, therefore, is redundant. *Id.* Finally, defendants contend that any constitutional claims are barred under this code section if they are barred under Section 1983. *Id.*

Defendants cite no authority for the proposition that redundant claims cannot proceed under both Section 1983 and California Civil Code § 52.1 and this Court has found no such authority. However, this Court finds that any constitutional claim found improper under Section 1983 cannot proceed before this Court under the California Civil Code. Accordingly, defendants' motion to dismiss plaintiff's sixth cause of action pursuant to California Civil Code 52.1 is GRANTED as to plaintiff's constitutional claims dismissed herein and DENIED as to those claims that remain.

### 2. Eleventh Amendment Immunity

Defendants also contend that plaintiff's damages claims are barred by the Eleventh Amendment to the United States Constitution. Mot. at 17 (citing *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). Plaintiff, in opposition, concedes that the Eleventh Amendment bars plaintiff's request for damages as to the Poway Unified School District and the individual defendants in their official capacities. *See* Opp. at 23–24.

### a. Poway Unified School District

The Eleventh Amendment prohibits suits against a state, and section 1983 does not abrogate this immunity since a state is not a "person" for purposes of the statute.[8] *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 62, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). As an "arm" of the state, the Poway Unified School District itself is shielded from liability under the Eleventh Amendment. *Id.* at 70, 109 S.Ct. 2304; *Belanger v. Madera Unified School District,* 963 F.2d 248, 251 (9th Cir.1992) (California school districts are considered to be state agencies for immunity purposes); *Mitchell v. Los Angeles Community College Dist.,* 861 F.2d 198, 201 (9th Cir.1988). "[I]n the absence of

---

**8.** 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

consent a suit in which the State or one of its agencies or department is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citations omitted). Therefore, plaintiff's damages claims against the Poway Unified School District, undisputably a department of the state, are prohibited by the Eleventh Amendment even though he seeks prospective relief. The state has not consented to be sued under section 1983 and Congress did not override states' sovereign immunity when it enacted section 1983. *Will,* 491 U.S. at 67, 109 S.Ct. 2304; *Southern Pacific Transp. Co. v. City of Los Angeles,* 922 F.2d 498 (9th Cir. 1990). Accordingly, defendants' motion to dismiss plaintiff's damages claim against the Poway Unified School District is GRANTED.

### b. Individual Defendants in Their Official Capacities

 The Eleventh Amendment also prohibits damage actions against state officials acting in their official capacities. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). However, the Eleventh Amendment "does not bar actions against state officers in their official capacities if the plaintiffs seek only a declaratory judgment or injunctive relief." *Chaloux v. Killeen,* 886 F.2d 247, 252 (9th Cir.1989) (internal quotations omitted); *Pennhurst,* 465 U.S. at 104–06, 104 S.Ct. 900. "It is well established that the Eleventh Amendment does not bar a federal court from granting prospective injunctive relief against an officer of the state who acts outside the bounds of his authority." *Porter v. Bd. of Trustees, Manhattan Beach Unified Sch. Dist.,* 307 F.3d 1064, 1074 (9th Cir.2002) (quoting *Cerrato v. San Francisco Community College Dist.,* 26 F.3d 968, 973 (9th

Cir.1994); *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Injunctive relief, however, is available only if there is a "real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

There appears to be no disagreement that the Eleventh Amendment bars damages claims against the individual defendants in their official capacities. Therefore, defendants' motion to dismiss plaintiff's damages claims against the individual defendants in their official capacities is GRANTED. Insofar as defendants move to dismiss the damages claims against the individual defendants in their personal capacities, absent qualified immunity from suit, the motion is DENIED.

### 3. Qualified Immunity

 Plaintiff also sues the individual defendants in their personal capacities. Individual defendants sued in their personal capacities *may* be liable for damages under Section 1983, if the doctrine of qualified immunity does not apply. *Price,* 928 F.2d at 828; *Cerrato,* 26 F.3d at 973 n. 16. Defendants contend that the individual defendants are immune from suit under the doctrine of qualified immunity and, therefore, should be dismissed. Mot. at 19–21. The affirmative defense of "qualified immunity" protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The entitlement to qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). This standard

" 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam) (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)); *Jeffers v. Gomez,* 267 F.3d 895, 909 (9th Cir.2001); *Saucier v. Katz,* 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct."). Both the Supreme Court and the Ninth Circuit have consistently held that the doctrine of qualified immunity shields " 'government officials performing discretionary functions ... from liability for *civil damages* ...' " *Lytle v. Wondrash,* 182 F.3d 1083, 1086 (9th Cir.1999) (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727) (emphasis added). Qualified immunity "does not bar actions for declaratory or injunctive relief." *Presbyterian Church (U.S.A.) v. United States,* 870 F.2d 518, 527 (9th Cir.1989) (citing *Harlow,* 457 U.S. at 806, 102 S.Ct. 2727); *Keenan v. Hall,* 83 F.3d 1083, 1093 (9th Cir.1996) (citing *American Fire. Theft & Collision Managers, Inc. v. Gillespie,* 932 F.2d 816, 818 (9th Cir.1991)); *see also Wood v. Strickland,* 420 U.S. 308, 314 n. 6, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) ("[I]mmunity from damages does not ordinarily bar equitable relief as well."). The Court notes that plaintiff is seeking declaratory and injunctive relief as well as damages. *See* Compl. at 17–18. Therefore, this Court limits its discussion and decision to plaintiff's damages claims.

### a. Step One—Constitutional Violation

The required first step in a qualified immunity analysis is, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *Jackson v. City of Bremerton,* 268 F.3d 646, 650 (9th Cir.2001); *Johnson v. County of Los Angeles,* 340 F.3d 787, 791 (9th Cir.2003) (noting that because qualified immunity is " 'an entitlement not to stand trial' ... courts, not juries, [must] settle the ultimate questions of qualified immunity") (quoting *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *Haynie v. County of Los Angeles,* 339 F.3d 1071, 1078 (9th Cir. 2003).

For the reasons discussed above, the Court has found that plaintiff has alleged facts sufficient to survive a motion to dismiss his claims concerning violation of his religious and speech rights under the First Amendment. Even though his claims have yet to be tested on the merits, the Court assumes, for purposes of this motion, plaintiff's allegations survive the first prong of qualified immunity analysis.

### b. Step Two—Clearly Established Law

The Court now must turn to the next step: whether "it would be clear to a reasonable officer that [t]his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151; *Wilkins v. City of Oakland,* 350 F.3d 949, 954 (9th Cir.2003). Therefore, the Court must next decide whether the "contours" of the right are " 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

The "clearly established" inquiry focuses on whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *see Saucier*, 533 U.S. at 202, 121 S.Ct. 2151, or whether the state of the law gave "fair warning" to defendants that their decision to deny plaintiff his constitutional rights was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 740, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. Officials, however, "can still be on notice that their conduct violates established law, even in novel factual circumstances." *Hope*, 536 U.S. at 741, 122 S.Ct. 2508. Specificity only requires that the unlawfulness be apparent under preexisting law. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Defendants contend that, even though it appears clear that plaintiff's T-shirt message would create a disruption at the School, it still remains to be seen whether "federal law will overcome the clear obligation of the School District staff to stop this speech against persons in a classification protected by the State of California." Mot. at 20–21. Defendants rely upon California's Education Code and Code of Regulations that provide definitions of "sexual harassment." *Id.* at 20.

Plaintiff, in opposition, contends that the school officials' reliance on California law in determining whether federal law would be violated by their actions is improper based on the Supremacy Clause, which requires the states to abide by federal law where the state law is conflicting. *See* Opp. at 21–22. Plaintiff argues that, even if defendants were obligated to abide by state law, "the law was just as clear in April 2004 as it is today—state law must give way to federal law." *Id.* at 22. Plaintiff also contends that plaintiff's speech was not prohibited under California's Education Code. *Id.*

Defendants, in reply, claim that plaintiff's argument is presented as if the state law has "already been declared to violate [plaintiff's] right to free speech." Reply at 8. Defendants assert that it is unclear whether plaintiff's "right to free speech and religion is overcome by the state statutes prohibiting sexual orientation harassment." *Id.* at 7.

This Court agrees with defendants. The school officials' actions fell well within the policies and law provided by the School District[9] and the Court cannot find that the alleged unlawfulness of the state laws and the School's policies was apparent under pre-existing law. *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. This Court further finds that it was not sufficiently "clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *see Saucier*, 533 U.S. at 202, 121 S.Ct. 2151, or that the current state of the law gave defendants "fair warning" that their decision to deny plaintiff his constitutional rights was unconstitutional. *Hope*, 536 U.S. at 740, 122 S.Ct. 2508. Therefore, the individual defendants are entitled to qualified immunity against plaintiff's damages claims in this case. Accordingly, defendants' motion to dismiss plaintiff's damages claims against the individual defendants based on qualified immunity is GRANTED.

## II. Plaintiff's Motion for Preliminary Injunction

Having determined that plaintiff's claims based on his rights to freedom of speech and religion under the First Amendment

---

9. In addition, this Court notes it has determined, *supra*, the School's policies are not vague or impermissibly lacking in objective standards as a matter of law.

and his right to equal protection of the law under the Fourteenth Amendment survives defendants' dismissal motion, this Court now turns to plaintiff's motion for preliminary injunction. Plaintiff seeks this Court's order enjoining defendants from enforcing their policies and practices.

### A. Legal Standard

A party seeking injunctive relief under Federal Rule of Civil Procedure 65 must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir.1999); *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir.1998). " 'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.' " *Roe*, 134 F.3d at 1402 (citing *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 397 (9th Cir.1992)); *accord Sun Microsystems*, 188 F.3d at 1119. "Thus, 'the greater the relative hardship to the moving party, the less probability of success must be shown.' " *Sun Microsystems*, 188 F.3d at 1119 (quoting *National Ctr. for Immigrants Rights v. INS*, 743 F.2d 1365, 1369 (9th Cir.1984)). "In cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir.1992) (citing *Caribbean Marine Services Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir.1988)).

### B. Analysis

This Court notes that all plaintiff needs to demonstrate irreparable harm in a First Amendment context is to show "the existence of a colorable First Amendment claim." *Sammartano v. First Judicial Court*, 303 F.3d 959, 973 (9th Cir.2002).

Therefore, because plaintiff's First Amendment challenges have survived defendants' motion to dismiss, this Court finds plaintiff's claims demonstrate irreparable harm for purposes of the instant motion for preliminary injunction. Accordingly, this Court confines its discussion to whether plaintiff has demonstrated a likelihood of success on the merits of his claims and whether the balance of hardships tip sharply in his favor.

#### 1. Likelihood of Success on the Merits

Plaintiff contends that there is a high probability he will succeed on the merits of his claims. Defendants disagree. This Court, after a thorough review of the pleadings, declarations, and relevant exhibits submitted by the parties, finds that plaintiff has failed to demonstrate he will succeed on the merits of his claims. As discussed previously, on motion to dismiss, this Court must view all facts and allegations in the light most favorable to plaintiff and construe all inferences drawn from the facts in that same light. *See Thompson*, 295 F.3d at 895; *Cahill*, 80 F.3d at 337–38. This Court is further confined, on motion to dismiss, to the four corners of the complaint and may not review extrinsic evidence in making its determination. *See Parrino*, 146 F.3d at 705–06; *Lee*, 250 F.3d at 688–89. Those restrictions are not required on consideration of a motion for preliminary injunction; a preliminary injunction motion can be granted on affidavits. *See Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir.1984); *see also National Organization for Reform of Marijuana Laws v. Mullen*, 608 F.Supp. 945 (D.C.Cal.1985). The Court "may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt*, 734 F.2d at 1394. The record presented by the parties, in-

cluding the declarations submitted by defendants, persuade this Court that plaintiff will not succeed on the merits of his claims that have survived defendants' challenge on motion to dismiss.

Three of plaintiff's constitutional claims have survived defendants' motion to dismiss: (1) the violation of plaintiff's right to free speech; (2) the violation of plaintiff's right to free exercise of religion; and (3) the violation of plaintiff's rights under the Establishment Clause. The Court addresses each of the remaining claims in turn.

### a. Freedom of Speech Claim

Defendants have not provided any additional evidence to aid this Court's determination of whether the speech at issue is "plainly offensive" thereby rendering the speech suppressible under *Fraser*. However, student speech will not offend the Constitution's free speech prohibitions if it "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Tinker*, 393 U.S. at 513, 89 S.Ct. 733. *"Tinker* does not require certainty that disruption will occur, 'but rather the existence of facts which might reasonably lead school officials to forecast substantial disruption.'" *LaVine*, 257 F.3d at 989 (quoting *Tinker*, 393 U.S. at 514, 89 S.Ct. 733). Thus, a showing that the suppressed speech might reasonably be forecasted as a material disruption at school negates plaintiff's claims.

Defendants have presented such a showing. The declaration of Lynell Antrim, Assistant Principal, indicates that the previous year's "Day of Silence" conducted at the school had resulted in "volatile behavior," including altercations between students. Antrim Decl. ¶ 2. David LeMaster, a History and English teacher at the School, testifies in his declaration that he observed a disruption in the class that plaintiff attended while wearing the T-shirt

at issue here. LeMaster Decl. ¶ 3. LeMaster also stated that he recalled that the events from the previous year's "Day of Silence" had resulted in "tensions between students." *Id.* ¶ 4. Scott Fisher, Principal at the School, stated that plaintiff told him a "tense verbal conversation with a group of students" had already taken place due to the T-shirt's message and was mindful of altercations that had occurred during the previous year's "Day of Silence." Fisher Decl. ¶¶ 3, 8.

This evidence, along with the allegations contained in the complaint espousing the concerns of Principal Giles, Assistant Principal Antrim and the deputy sheriff, and reciting the school policies, is sufficient, in this Court's view, to permit that the school officials to "reasonably ... forecast substantial disruption of or material interference with school activities." *Tinker*, 393 U.S. at 514, 89 S.Ct. 733. Therefore, this Court finds that plaintiff has failed to demonstrate a likelihood of success on the merits of his free speech claim.

### b. Free Exercise Claim

Plaintiff bases his free exercise claim, in part, on it being a "hybrid" claim which requires strict scrutiny analysis. *See Smith*, 494 U.S. at 881, 110 S.Ct. 1595; *Swanson*, 135 F.3d at 700. As plaintiff correctly points out, without the free speech claim, plaintiff's free exercise claim does not require strict scrutiny. *See Smith*, 494 U.S. at 878, 110 S.Ct. 1595. Plaintiff concedes that the School's prohibition on speech is "arguably" a neutral law requiring scrutiny pursuant to a rational basis test. *See* Pltff's Opp. to Mot. to Dism. at 15. This Court finds the School's policies are clearly based on a legitimate pedagogical concern—avoidance of disruption based on intolerance of others—which provides a rational basis for the School's suppression of plaintiff's expression. *See Tinker*, 393 U.S. at 514, 89 S.Ct. 733. Plaintiff's right to free exercise

does not relieve him of his obligation to comply with valid and neutral policies having general application to all students. *Smith*, 494 U.S. at 879, 110 S.Ct. 1595. Therefore, in light of the allegations in the complaint and the evidence presented in defendants' declarations, as detailed above, this Court finds that, without the free speech claim, plaintiff has failed to demonstrate that defendants' actions were irrational or wholly arbitrary. Accordingly, plaintiff has failed to demonstrate a likelihood of success on the merits of his free exercise claim.

### c. Establishment Clause Claim

Plaintiff's Establishment Clause claim is similarly devoid of support. Plaintiff alleges that the statements made by the deputy sheriff and defendant Giles were attempts by school authorities to coerce plaintiff to change his religious views. *See* Compl. ¶ 51, 57, 108–110; Mot. at 17–18. This Court denied defendants' motion to dismiss this claim because the allegations could possibly be proven. However, this Court's decision rested on the fact that, on motion to dismiss, the facts and allegations, along with all inferences construed from those facts, must be viewed in the light most favorable to plaintiff. The requirement of deference to plaintiff's allegations is not present in determining whether plaintiff can demonstrate a likelihood of success on the merits. From the standpoint of plaintiff's motion for injunctive relief, the Court finds it unlikely that the statements in the complaint relating to Giles and the deputy sheriff were given to coerce plaintiff into changing his religious beliefs. As previously stated, the complaint avers that the deputy sheriff "*proposed* to [plaintiff] that as a member of the Christian faith, he *should* understand that Christianity was based on love not hate, and that [plaintiff] *should* not be offensive to others." Compl. ¶ 51 (emphasis added). Defendant Giles, similarly, merely "*advised* [plaintiff] that when he comes to Poway High, *if* his religious beliefs are offensive, he too must 'leave his faith in the car.' " *Id.* ¶ 57 (emphasis added). Plaintiff's deliberate use of the words "proposed,' "'should," and "advised" signifies that the speaker did not specifically order plaintiff to cease and desist in expressing his religious views. Further, the use of the word "if" signifies that the speaker left the decision as to whether to "leave his faith in the car" to Plaintiff "if" it was plaintiff's belief that the expressive message would be offensive. *See id.* ¶ 57. This Court finds it unlikely that the statements alleged to be made by the school officials could be proven to be attempts to coerce plaintiff to change his religious views. It appears more reasonable that the trier of fact would infer that the officials' statements relied upon by plaintiff to depict coercion were no more than options presented to and left with plaintiff.

In addition, the policies and statements made had a secular purpose, *i.e.*, promoting tolerance, and not advancing or inhibiting religion. Moreover, there are no facts to suggest that defendants approved one religious message over another or approved "irreligion over religion." Compl. ¶ 111. Indeed, plaintiff has not presented any further evidence to persuade this Court that the claim will succeed. Therefore, this Court finds that plaintiff has failed to demonstrate a likelihood of success on the merits of his Establishment Clause claim.

### 2. Balance of Hardships

In determining whether the balance of hardships tip sharply in plaintiff's favor, plaintiff's "sincerely held religious beliefs" regarding the Biblical condemnation of homosexual behavior and his assertion that the First Amendment permits him to express his beliefs in a school setting must be balanced against the School's responsibility to act *in loco parentis* on behalf of

the students, promote tolerance, and protect the rights of other students. *See Sun Microsystems,* 188 F.3d at 1119. The Supreme Court has recognized that school officials have a responsibility to discipline students where there "is reason to believe the student's expression 'intrudes upon the work of the schools or on the rights of other students.'" *Tinker,* 393 U.S. at 508, 89 S.Ct. 733. School officials are in a better position, based upon their familiarity with the pulse and culture of the school setting, to decide whether restrictions on expression are appropriate. *See Chandler,* 978 F.2d at 527. Here, the School's policies implement State of California rules to prohibit discrimination, intimidation, harassment and hate based upon, among other classifications, sexual orientation. This Court notes that there is nothing in the record to suggest plaintiff would not be free to proselytize any religious view or any other viewpoint in a manner that does not violate neutral and valid school policies. On the other hand, requiring the School to allow plaintiff to express this particular viewpoint could result in disruption of the work of the schools or the violation of the rights of other students.

Defendants, in their opposition, contend that the public interest would not be served by allowing plaintiff's expression in school. *See* Opp. at 22–23 (citing *Sammartano v. First Judicial District Court,* 303 F.3d 959, 974 (9th Cir.2002)(where First Amendment rights are concerned, the public's interest may still outweigh the moving party's interest, especially in a school setting)). Defendants point out that the School has an obligation to keep their students "safe regardless of sexual orientation." Opp. at 22. According to defendants, "the safety and well-being of gay and lesbian students, and the ability of school administrators to regulate anti-gay speech, outweighs [p]laintiff's competing interest." *Id.* This Court agrees with defendants. Moreover, in this Court's view,

balancing the needs of the School to keep all their students safe coupled with the foreseeable vision that other students may feel free to exhibit these types of expressions that would interfere with the work of the school and violate the rights of others against plaintiff's interests does not tip the scales sharply in plaintiff's favor.

### C. Conclusion

Because this Court finds that plaintiff has failed to demonstrate a likelihood of success on the merits of any of the claims that survived defendants' motion to dismiss and that the balance of hardships do not tip sharply in plaintiff's favor, plaintiff's motion for preliminary injunction is DENIED.

### *ORDER*

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) [doc. #14] is **GRANTED IN PART and DENIED IN PART** as follows:

 a. Defendants' motion to dismiss plaintiff's first cause of action is **DENIED;**

 b. Defendants' motion to dismiss plaintiff's second cause of action is **DENIED;**

 c. Defendants' motion to dismiss plaintiff's third cause of action is **GRANTED;** plaintiff's third cause of action is **DISMISSED without prejudice;**

 d. Defendants' motion to dismiss plaintiff's fourth cause of action is **GRANTED;** plaintiff's fourth cause of action is **DISMISSED with prejudice;**

 e. Defendants' motion to dismiss plaintiff's fifth cause of action is **DENIED;**

 f. Defendants' motion to dismiss plaintiff's sixth cause of action pur-

suant to California Civil Code 52.1 is **GRANTED** as it relates to plaintiff's third and fourth causes of action and **DENIED** as it relates to the remaining claims;

g. Defendants' motion to dismiss plaintiff's damages claims as to defendant Poway Unified School District and the individual defendants in their official capacities based on Eleventh Amendment immunity is **GRANTED**; and

h. Defendants' motion to dismiss plaintiff's damages claims as to the individual defendants in their personal capacities based on qualified immunity is **GRANTED**.

2. Plaintiff's motion for preliminary injunction [doc. # 18] is **DENIED**.

3. Defendants shall file an answer or otherwise respond to the complaint no later than December 3, 2004.